619 P.2d 1145

Samuel EISMANN, Hon. James G. Towles, Hon. Watt E. Prather, Jim Harris, Prosecuting Attorney of Ada County, Petitioners,

v.

James A. MILLER, Respondent.

No. 13907.

Supreme Court of Idaho.

Nov. 18, 1980.

Samuel Eismann, Coeur d'Alene, Jim C. Harris, Pros. Atty. of Ada County, Scott L. Campbell, Deputy Pros. Atty., Boise, for petitioners.

James A. Miller, pro se.

Before DONALDSON, C. J., BAKES, McFADDEN and BISTLINE, JJ., and SCHROEDER, J. Pro Tem.

McFADDEN, Justice.

In this original proceeding the unopposed affidavits filed in support of petitioner's request for injunctive · relief establish the following facts:

Eismann is a private attorney practicing law in this state. Judge Towles and Judge Prather are judges of the First Judicial District. Jim Harris is the prosecuting attorney for Ada County. They have in common that each has been subjected to legal action taken by the respondent acting *pro se.*

Eismann represented the defendants in *Miller v. The Coeur d'Alene Press, et al.,* Kootenai County case no. 40300, an action filed by the respondent in the First Judicial District as plaintiff *pro se.*[1] This action was soon followed by a suit (case no. 42639), filed by the respondent, naming as defendants Eismann, his co–counsel, the defendants in case no. 40300, and Judge Prather. The latter presided in case no. 40300.

Thereafter Eismann was again sued by the respondent in case no. 45359, an action seeking to disbar him for representing Kootenai County Prosecutor Glen Walker in yet another action by respondent (case no. 45171).[2] The respondent has attempted at least two times to obtain a felony warrant for Eismann's arrest on the grounds that he filed a notice of appearance in case no. 45171. Respondent has also recorded a so– called "common law lien" against Eismann's property.

Judge Prather, in addition to being named as a defendant in case no. 42639, was also sued by respondent in case no. 42638. Respondent has caused a criminal complaint

to issue against the judge, and has attempted to have him removed from office by means of a complaint filed with this court, which complaint was dismissed. Judge Prather was also named as a defendant in case no. 46572, about which more will be said *infra.*

Judge Towles, Judge Prather and others were named as defendants in a *pro se* action filed by the respondent in U.S. District Court for the Eastern District of Washington.[3] Judge Towles is also named in case no. 46572.

Mr. Harris is also a named defendant in case no. 46572, together with the other petitioners, *supra,* and other judges in the Idaho court system, judges of the federal bench sitting in Idaho, private attorneys, the Attorney General of the state and a number of his deputies, professional liability insurance carriers, and a number of "John Does." After the initial filing of this suit in the First Judicial District, the respondent amended his complaint to substitute the present members of this court for four of the "John Doe" defendants; Justice Shepard was excluded in this amendment as respondent had previously named him in the action. The prayer of case no. 46572 seeks a hearing before a specially constituted bench and prays for damages in the amount of $130,000,000 predicated on allegations of violation of the respondent's civil rights (42 U.S.C. § 1983), violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 *et seq.*), obstruction of justice, mail fraud, and destruction of the constitutional form of government in Idaho. The federal official defendants have caused the case to be removed to federal court where it is presently pending.

While details of each of the other actions filed, argued, or pursued by the respondent would be counterproductive, in light of the

---

1. Unless otherwise noted, all cases were filed in the District Court of Kootenai County in the First Judicial District.

2. The respondent has named Walker as defendant in at least four civil actions and has instigated four criminal complaints against him.

3. Petitioners allege their belief that, as of this time, that suit has been dismissed.

petition here under our consideration, the parameters of the problems will be generally stated.

The respondent has been involved as complaining witness in some 20 criminal actions brought in the First Judicial District since September of 1978. These actions, aimed at attorneys, judges, county officials and others have alleged in varying degrees perjury, possession of stolen property, falsifying or secreting public records, criminal conspiracy, neglect or malfeasance of office, embezzlement or misuse of public funds, counterfeiting or forging of public seals, and a number of violations of Idaho and United States Constitutional provisions. The majority of these complaints have been dismissed while several are still pending.

The respondent has also filed as plaintiff *pro se* approximately 20 actions against the petitioners and others. A number of these suits reflect the tenor of the charges in the criminal actions (i. e., misuse of public office or funds, criminal conspiracy to deny respondent's rights, etc.) while others seek to disbar attorneys, obtain damages or declaratory relief, and so on. Beyond this, the respondent has filed for record a number of *lis pendens* and "common law liens" against the real property interests of various defendants in his suits.

The petitioners allege that each of the several actions instituted at respondent's instance, and the means by which he apparently seeks to "enforce" his claims such as the liens and disbarment proceedings are uniformly frivolous and are part of a scheme to harass those subjected thereto. While we are at this juncture neither able nor required to assess the motive and intent of the respondent, nor weigh the possibility of some merit in each of his legal actions, the following contentions of the petitioners are substantiated in the record before us.

The actions taken by the respondent have hindered the effective administration of justice in the courts of this state and have entailed a large and unacceptable burden in both time and expense upon judicial personnel and resources; there is no reason to anticipate any letup in respondent's activities, which on the record appear to be exacerbating; the petitioners have no adequate remedy at law to prevent this clear abuse of legal process; the respondent will persist if not enjoined, having clearly announced and demonstrated his intention to continue in the future that which he has already done.

In August, 1980, upon order of this court, all of the respondent's then pending actions in the First Judicial District were assigned for hearing before Judge Swanstrom of the Second Judicial District. The respondent appeared at this hearing and, after engaging in what might be characterized as a "tirade" against the court, attempted to place Judge Swanstrom under a "citizen's arrest" demanding that a law enforcement officer in the courtroom seize and remove the judge.

Within the complaint filed in case no. 46572, the respondent makes the following statement:

"NOTICE IS GIVEN that No public officer of the State of Idaho, or the resources, finances, prestige, or power of the State of Idaho can be lawfully employed to defend ANY defendant herein in ANY manner and if attempted will result in that public officer being identified as one of the John Doe defendants herein . . . ."

He follows with a paragraph stating in essence that notice is given to all judges sitting in Idaho, state and federal, that due to the fact that they are all members of the same unconstitutional conspiracy they are necessarily disqualified from hearing his claim. He later asserts that the judicial branch ought to be "destroyed" as a part of government.

Petitioners seek relief prohibiting respondent from filing or continuing any *pro se* actions without prior approval of this court, and from filing any "common law liens" or other encumbrances in county records. This court issued, on October 8, 1980, an order to show cause and a temporary restraining order directing the respondent to appear before this court on October 22, 1980, to show cause why the temporary order should not become permanent and the petitioner's requested relief granted.

Respondent's only response to the petition was by way of a document entitled "Demand for an Order to Show Cause Upon Respondent Issue and Opposition to any Writ of Prohibition in Affidavit," in which he demanded three days in which to present argument to substantiate his allegations of conspiracy and corruption in case no. 46572, contending also that the members of this court were disqualified by reason of being named as defendants in case no. 46572.

An "Addendum to Demand for Order to Show Cause Upon Respondent" was filed herein after the respondent was served with this court's order of October 8, 1980, stating *inter alia*, that the respondent could not be forced to hire an attorney, that this court has no authority to issue any prohibitory orders, and that the petition and order evidences the criminal conspiracy which he alleged in case no. 46572. The respondent also makes demand in this document for a "lawful hearing" to be held on the order to show cause, but that this court's "Ex Parte" order of October 8, 1980 setting such a hearing "appears as a subterfuge and an unlawful proceeding to deny Due Process and Equal Protection of the Law in order to circumvent ... a Jury Trial [in case no. 46572]." He stated that in light of this court being something other than a "lawful" court, he will consent to a hearing only after the integrated bar of the state of Idaho is declared unconstitutional.

An order was entered denying his request for three days of argument but it specifically recognized his right to appear in this proceeding as ordered, and his right to file affidavits in support of his position.

On October 22, 1980, the hearing on the order to show cause was held as scheduled but respondent did not appear either in person or by counsel. The petitioners were represented by counsel who presented brief oral argument. The court recessed with instructions to the clerk to notify the court if the respondent appeared later that day. The respondent did not so appear and the matter was taken under advisement, following which an order issued stating in pertinent part:

"It appearing to the Court that good cause exists for granting the relief requested in the PETITION:

"NOW, THEREFORE, IT IS HEREBY ORDERED, that the Respondent, JAMES A. MILLER, be, and he is hereby, ordered, directed and commanded to forthwith cease, desist and refrain from filing or pursuing any pro se action, proceeding, or motion of any nature, kind or description in any court locate in the state of Idaho, without first obtaining written leave of this Court.

"IT IS FURTHER ORDERED, that the Respondent, JAMES A. MILLER, be, and he is hereby, ordered, to forthwith cease, desist and refrain from filing or recording any lien of any nature, kind or description, including but not limited to a purported 'common law lien,' except by and through an attorney licensed to practice law in the state of Idaho.

"IT IS FURTHER ORDERED, that all lis pendens heretofore filed or recorded by the said Respondent, JAMES A. MILLER, in connection with any litigation pending in the state of Idaho be, and the same are hereby declared null and void, ... and shall be deemed expunged from the records ....

"IT IS FURTHER ORDERED, that all purported 'common law liens' filed or recorded by the Respondent, JAMES A. MILLER, ... and the same are hereby, declared void and shall be deemed expunged from the records ....

"IT IS FURTHER ORDERED, that any violation of this Order by the Respondent, JAMES A. MILLER, directly, or indirectly, by himself or by any of his agents, representatives, or any other person acting at his request or suggestion, shall constitute contempt of this Order and this Court, and may result in a fine or imprisonment or both.

"IT IS FURTHER ORDERED, that the Clerk of the Court is hereby instructed to cause to have a certified copy of this Order served upon the Respondent, JAMES A. MILLER, forthwith.

"IT IS FURTHER ORDERED, that the Administrative Director of the Courts shall forthwith cause copies of this Order to be disseminated to all clerks of the district courts and ex officio county recorders in the state of Idaho directing them to refuse to accept for filing any pro se pleadings or documents of JAMES A. MILLER in any action or proceeding in any court of the state of Idaho without written leave of this Court, and further directing them as ex officio recorders to refuse to except from the said JAMES A MILLER for filing or recording any lien as above described, unless the same is submitted for filing or recording by an attorney licensed to practice law in the state of Idaho."

We briefly detail the reasoning bringing us to the issuance of the above order. At the outset, we consider respondent's challenge to the propriety of our passing judgment in this proceeding.

■ Ordinarily, a member or members of this court engaged in legal action with a party appearing before this court in regard to another matter would voluntarily disqualify themselves.[4] However, this is far from an ordinary situation. The respondent has sued all members of this court, as well as virtually all members of the bench in northern Idaho. He has manifested a pattern of initiating litigation against any judge ruling against him. And most importantly, he has stated and restated his belief that no judge in Idaho can hear his cases, at least until the bar is declared unlawful.

■ Regardless of our reaction to the threats of respondent, however, his frontal attack on all members of the Idaho judiciary engenders application of an accepted rule prohibiting this court from self–disqualification. As recognized in *Higer v.*

*Hansen*, 67 Idaho 45, 170 P.2d 411 (1946), where disqualification results in an absence of judicial machinery capable of dealing with a matter, disqualification must yield to necessity. 67 Idaho at 50–51, 170 P.2d at 413–14. See also *Girard v. Defenbach*, 61 Idaho 702, 706, 106 P.2d 1010 (1940).

■ Application of the "rule of necessity" is clearly called for here, where the respondent has stated that no judge in the state is capable of hearing his case and has manifested an intent to sue all those who try. *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920); *Mosk v. Superior Court of Los Angeles County*, 25 Cal.3d 474, 159 Cal.Rptr. 494, 601 P.2d 1030 (1979); *Schwab v. Ariyoshi*, 57 Haw. 348, 555 P.2d 1329 (1976); *State ex rel. Yuhas v. Board of Medical Examiners*, 135 Mont. 381, 339 P.2d 981 (1959); *Kennett v. Levine*, 50 Wash.2d 212, 310 P.2d 244 (1957); *State ex rel. Gardner v. Holm*, 241 Minn. 125, 62 N.W.2d 52 (1954); *Johnson v. State Bar*, 4 Cal.2d 744, 52 P.2d 928 (1935); *State ex rel. Miller v. Aldridge*, 212 Ala. 660, 103 So. 835 (1925). See also, *Turner v. American Bar Ass'n*, 407 F.Supp. 451 (N.D.Tex.; W.D.Pa.; N.D.Ind.; D.Minn.; S.D.Ala.; and W.D.Wis.1975) *aff'd, Pilla v. Am. Bar Ass'n*, 542 F.2d 56 (8th Cir. 1976); *U. S. v. Corrigan*, 401 F.Supp. 795 (D.Wyo.1975) *rev'd on other grounds*, 548 F.2d 879 (10th Cir. 1977); *Atkins v. U. S.*, 556 F.2d 1029, 214 Ct.Cl. 186, (1977) *cert. den.* 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). See generally 48 C.J.S. Judges § 74, p. 1041–2; 46 Am. Jur.2d, Judges, §§ 89–90, p. 156; *Annot.* "Necessity as justifying action by judicial or administrative officer otherwise disqualified to act in particular case," 39 A.L.R. 1476.

Our authority to issue this order is fundamental. The Idaho Constitution, Art. 5,

---

4. While a judge may prefer to voluntarily recuse himself in such a situation, the mere filing of suit against a judge is not conclusive as to bias or other grounds mandating disqualification. Courts cannot allow the mere filing of pleadings to transmute a suit between others into the judge's suit for the purpose of forcing his disqualification since to do so would thwart the judicial process and serve no legitimate purpose. *Ely Valley Mines, Inc. v. Lee*, 385 F.2d 188, 191 (9th Cir. 1967); *U. S. v. Corrigan*, 401 F.Supp. 795, 798 (D.Wyo.1975) *rev'd on other grounds*, 548 F.2d 879 (10th Cir. 1977); *State v. Meyer*, 31 Or.App. 775, 571 P.2d 550 (1977); *Smith v. Smith*, 115 Ariz. 299, 564 P.2d 1266 (Ariz.App.1977); *State ex rel. Mitchell v. Sage Stores Co.*, 157 Kan. 622, 143 P.2d 652 (1943).

§ 2, places the obligation and power to administer and supervise the judicial system of this state squarely upon the shoulders of this court. *Accord People v. Spencer*, 185 Colo. 377, 524 P.2d 1084, 1086 (1974). Article 5, § 9 grants this court the authority to issue all writs and orders, including those of prohibition, which are necessary and proper in exercising its jurisdiction. See also I.A.R. 5. Analogous authority is present in the federal sphere under the "All Writs Act," 28 U.S.C. § 1651(a), and has been used by those courts in enjoining repetitious and injurious litigation. *See Clinton v. U. S.*, 297 F.2d 899, 901–2 (9th Cir. 1961); *Meredith v. John Deere Plow Co.*, 261 F.2d 121, 124 (8th Cir. 1958), *cert. den.* 359 U.S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574 (1958); *Boruski v. Stewart*, 381 F.Supp. 529, 535 (S.D.N.Y.1974); *Rudnicki v. McCormack*, 210 F.Supp. 905, 908–911 (D.R.I.1962).

■ Petitioners by affidavit and with reference to the judicial records of this state have more than adequately supported their allegations. The net effect of respondent's actions up to this point has been to burden the judicial machinery of this state with repetitive lawsuits seeking vindication of one individual's political and legal views; to seek to bind public officials in the performance of their duties by threat; to hamper and disrupt the personal and professional lives of many through suit, liens, disbarment proceedings, and other means. The judiciary has been forced at considerable taxpayer expense to make provisions for substitute judges. At both state and county levels valuable time and resources have been spent to defend public officials against the vast litigation spawned by this one individual. Although the time, efforts, and concern of public officials from county clerks to members of this court have been engaged to an unreasonable degree by respondent's labors, the ultimate injury here necessarily falls upon the people of Idaho.

■ We do not fail to recognize that every individual in our society has a right of access to the courts. *See, e. g., Board of County Comm'rs v. Barday*, 594 P.2d 1057, 1059 (Colo.1979); *People v. Spencer, supra* 524 P.2d at 1086. However, the exercise of that right cannot be allowed to rise to the level of abuse, impeding the normal and essential functioning of the judicial process. To allow one individual, untrained in the law, to incessantly seek a forum for his views both legal and secular by means of *pro se* litigation against virtually every public official or private citizen who disagrees with him only serves to debilitate the entire system of justice.

■■ We emphasize that our order does not, *deprive* the respondent of access to the courts of this state.[5] What is restricted is the respondent's ability to hamstring the judicial system of this state with unapproved *pro se* filings and related matter, and with attempted "enforcement" of those efforts through certain unacceptable means.[6]

Thus the order issued by this court on October 22, 1980, is hereby confirmed with directions that it be served on all clerks of the courts of this state acting as ex officio recorders with record of service to be filed with this court.

DONALDSON, C. J., BAKES and BISTLINE, JJ., and SCHROEDER, J. Pro Tem., concur.

---

5. Of course we recognize the respondent's constitutional right to appear *pro se* in his own defense in a criminal action and our order does not affect this right. *See e. g., U. S. v. Corrigan, supra*, 401 F.Supp. at 799.

6. Miller has failed to meet relevant legal requirements with respect to the creation, character or extent of liens in this state. There existing no authority for his unilateral assertions of interest in the property of others, the "liens" he has filed are, *ab initio*, without any legal effect.

Similarly, Miller's formal notices of *lis pendens* have operated in the nature of recorded liens on petitioners property. Yet it is clear from the record that none of the property which has been so encumbered is involved in the actions against petitioners. Under such circumstance the doctrine of *lis pendens* is wholly inapplicable. I.C. § 5-505. Thus, both the liens and *lis pendens* have been dissolved and ordered expunged from the record.