# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36175

JOHN H. BRADBURY, )
)
    Petitioner, )
)
v. )
)
IDAHO JUDICIAL COUNCIL, )
)
    Respondent. )
)

Boise, July 2009 Term

2009 Opinion No. 114

Filed: September 10, 2009

Stephen W. Kenyon, Clerk

Petition for review of determination by the Idaho Judicial Council.

Clements, Brown & McNichols, P.A., Lewiston; Runft & Steele Law Offices, PLLC, Boise; and M. Karl Shurtliff, Boise; for petitioner. Michael E. McNichols argued.

The Roark Law Firm, Hailey, for respondent. R. Keith Roark argued.

J. JONES, Justice

District Judge John H. Bradbury (Petitioner) asks the Court to review a determination of the Idaho Judicial Council (Council) that he does not "actually reside" in Idaho County as required by Idaho Code sections 1-803 and 1-809. The Council recommended that Judge Bradbury be suspended from serving as a district judge until such time he actually resides in Idaho County and that he pay the costs incurred by the Council in this proceeding. Based upon our independent review of the facts in the record, the Court finds that Petitioner is not in compliance with such residency requirement and orders that he take action to comply with the law.

## I. BACKGROUND SETTING

Petitioner was elected in 2002 for a district judge position with resident chambers in Idaho County. He took office in January 2003. Idaho Code section 1-809 requires that district judges actually reside at the place designated as their resident chambers. On December 20, 2002,

Petitioner purchased a house in Grangeville, Idaho County, and on October 16, 2003, he changed his voter registration to Idaho County.

On May 2, 2006, the Council notified Petitioner that it was conducting an inquiry into whether he was actually residing in Idaho County. Petitioner responded by letter on May 4, 2006, stating that he owned a fully furnished home in Grangeville, that he had a homeowner's exemption on that home, and that he was registered to vote and did vote in Idaho County. He also stated that he had a fully furnished home in Lewiston and that the home at which he stayed depended upon where his work was. By letter dated April 17, 2007, the Council informed Petitioner that, based upon his response, the Council was closing the file. The Council noted in its subsequent findings that Petitioner had not informed the Council "that he spent practically none of his nights in Grangeville, or, that in the prior six (6) months he had spent fewer than ten (10) evenings in Grangeville."

On September 12, 2007, the Council sent Petitioner a letter stating that it had received additional information and was re-opening the inquiry into whether he was actually residing in Idaho County. On October 31, 2007, Robert G. Hamlin, the Executive Director of the Council, interviewed Petitioner regarding the issue of whether he actually resided in Idaho County. That interview was recorded and transcribed by a court reporter. During that interview, Petitioner stated, "And my Constitutional duty is to do my job, and I think it trumps whatever the statutory obligation might be." He continued, "And I want to do my job. And I want to comply with the law. But I can't do both, as much as I want to." When asked, "So do you—you spend most of your time in Lewiston?" Petitioner answered, "Yeah, I do." Hamlin followed up by asking, "How many days—let me rephrase that, how many evenings a week do you spend in Grangeville?" Petitioner answered, "Practically none." He said that he got most of his personal mail in Lewiston and had registered his vehicles in Nez Perce County. He told Hamlin he spent most of his weekends at his ranch in Clearwater County where he is building a house. He also stated, "I can tell you that I would live in Grangeville if I could do my work and live in Grangeville."

On January 22, 2008, the Council sent Petitioner a letter stating that it did not appear that he actually resided in Idaho County. The letter noted Petitioner's contention that he could not do his job efficiently if he lived in Grangeville, but stated that if the statute requires that he actually reside in Idaho County he must do so. The Council concluded by stating that unless he could

2

show within fourteen days that he actually resided in Idaho County, the Council would proceed with formal charges. Petitioner did not attempt to do so, and on July 22, 2008, the Council commenced formal proceedings.

The notice of formal proceedings alleged four counts: Counts One and Three alleged violations of Canons 1(A) and 2(A) of the Code of Judicial Conduct for failing to actually reside in Idaho County, and Counts Two and Four alleged violations of the same canons regarding travel expense vouchers. The Council held an evidentiary hearing on December 17, 2008, at which Petitioner, the Idaho County Deputy Clerk, and Hamlin testified. Petitioner testified that he only stays overnight in Grangeville when he has a trial there and absent a trial he spends less than one night per week in Grangeville.[1] He testified that during 2008, he had spent several nights in Grangeville because his workload there had increased. He also acknowledged his prior statements, "And my Constitutional duty is to do my job, and I think it trumps whatever the statutory obligation might be . . . and I want to do my job, and I want to comply with the law, but I can't do both as much as I want to."

At the conclusion of the hearing, the Council issued written findings of fact, conclusions of law, and recommendations. It concluded that Petitioner did not actually reside in Idaho County in violation of Idaho Code sections 1-803 and 1-809, and that his failure to do so was a willful violation of Canons 1(A) and 2(A) pursuant to Idaho Code section 1-2103. It made no

---

[1] When questioned about the amount of time he actually resides in Idaho County, Bradbury testified as follows:

> Q. But as a practical matter, you are spending less than one night per week in Grangeville unless there's a trial?
> A. That's true.
> . . . .
> Q. Which, again, is less than one night per week in Grangeville, Idaho?
> A. It's less than one night a week up until this year where I've had at least one night a week and sometimes two, because I've had more trials.
> . . . .
> Q. In fact, you told Mr. Hamlin that in the six months preceding that interview, that is the six months prior to the 31st of October, 2007, you had spent less than ten evenings in Grangeville.
> . . . .
> A. I don't know if that's what I said or not. I wouldn't say that I didn't say it. It's consistent with my experience. I don't deny that.
> . . . .
> Q. And you spend practically none of you nights there [in Idaho County].
> A. Not this year. This year I've spent several nights there because I've had more cases there. The workload has increased.

findings regarding Counts Two and Four regarding travel vouchers. It recommended that Petitioner be immediately suspended until he begins actually residing in Idaho County, that if he does move to Idaho County he be required to submit monthly affidavits certifying where he actually resides, and that he pay the costs of counsel hired by the Council. On March 27, 2009, Petitioner filed a verified petition in this Court seeking review of the Council's determination.

## II. PROCEDURES AND STANDARD OF REVIEW

The Idaho Supreme Court holds original jurisdiction over claims of judicial misconduct. Idaho Const. Art. V, § 2; *Idaho Judicial Council v. Becker*, 122 Idaho 288, 292-93, 834 P.2d 290, 294-95 (1992). The Idaho Judicial Council is charged with investigating such claims. Idaho Code § 1-2103. Section 1-2103 "provides the means by which the Council may initiate investigations of judicial conduct and make recommendations to the Court for discipline, removal, or disability retirement of judges." *Becker*, 122 Idaho at 293, 834 P.2d at 295. Although the Council may initiate such investigations and make recommendations, "this Court has the ultimate authority and responsibility to decide what should be done in each case based on our weighing of the evidence presented to the Council and any additional evidence the Court permits." *Id*. This Court does not review the findings or conclusions made by the Council to determine if they are supported by the evidence and the law. It makes its own findings and conclusions from the evidence in the record. *Id*. When doing so, this Court applies a clear and convincing standard of proof. *Id*.

## III. MOTIONS TO DISQUALIFY

Before turning to the issues presented in the petition, the Court will consider the motions filed by Petitioner on August 21, 2009, seeking to disqualify Justices Roger S. Burdick, Jim Jones and Warren E. Jones. It does not appear that Petitioner seeks to disqualify Justice Pro Tem Wayne L. Kidwell. The briefs filed in support of the motions contend that the three Justices are biased and not impartial. The motions are not supported by affidavits. Some background is necessary in order to place the motions in context.

After two continuances—one at the behest of Petitioner and the other at the request of the Council—this matter was scheduled for oral argument on July 22, 2009. On July 17, 2009, Petitioner filed suit in the United States District Court for the District of Idaho against each of the Justices then sitting on this case—Chief Justice Daniel T. Eismann, Justices Roger Burdick, Jim Jones and Warren Jones, and Justice Pro Tem Wayne Kidwell. In his federal suit, Petitioner

asserted a variety of claims against the individual Justices and sought, among other things, to have the federal judge vacate the July 22 argument. The federal judge declined to vacate the argument and it proceeded as scheduled. Central to the claims in the federal suit were allegations that Chief Justice Eismann, as Chairman of the Idaho Judicial Council, had participated in Council proceedings pertaining to this matter and, therefore, could not act objectively. Petitioner has admitted having no claim that the Chief Justice was actually biased against him.

On August 5, 2009, Petitioner filed a motion with this Court, seeking to disqualify Chief Justice Eismann. On August 7, 2009, Chief Justice Eismann filed a recusal based upon the claims in the federal lawsuit. The Chief Justice cited an affidavit filed by him in the federal lawsuit showing that he had not participated in the proceedings before the Council relating to Petitioner, that he had been in the hospital undergoing chemotherapy for lymphoma at the time the Council's hearing was conducted, and that he had not discussed the Council's findings and recommendations with other members of the Council.

The timing of the motions to disqualify three of the four remaining Justices presiding on the case is somewhat troubling. The case was argued on July 22 and fully submitted for decision. Although the Idaho Rules of Civil Procedure do not apply in appellate proceedings, Rule 40(d), pertaining to disqualification of trial court judges, is instructive. Where a party seeks to disqualify a trial judge without cause, the motion must be timely filed before contested matters are presented for consideration. *See* Idaho R. Civ. P. 40(d)(1)(B). A motion for disqualification of a trial judge for cause may be made at any time but must be accompanied with an affidavit "stating distinctly the grounds upon which disqualification is based and the facts relied upon in support of the motion." Idaho R. Civ. P. 40(d)(2)(B). Petitioner's motions were unaccompanied by affidavits spelling out why the three Justices should be disqualified for bias or lack of impartiality, so the motions are more in the form of motions seeking to disqualify without cause. Should a party wish to file such a motion in order to call the attention of a Justice to a potential concern regarding participation on a particular case, the same should be filed in a timely manner before argument, not after the litigant has evaluated the tenor of questions asked by the particular Justice at the argument. It would be a dangerous precedent to allow a litigant to observe the questioning of the Justices at oral argument and, after the fact, seek to disqualify those Justices who appear to have reservations about aspects of the litigant's case.

5

Furthermore, there is nothing stated in Petitioner's motions indicating why an earlier suggestion of recusal could not have been made. From the commencement of this appeal, it was known to Petitioner that Idaho Code section 1-2101 provides that the Chief Justice of the Idaho Supreme Court is to serve as a member of the Council, as well as its chairman, and that Chief Justice Eismann was fulfilling that capacity when the appeal was filed. The identity of the other Justices who would preside over the matter was also known and it was known that all four would participate in all proceedings and deliberations. If any of those facts gave rise to concern on Petitioner's part, they should have been made known early on, at least prior to the argument. Nothing in Petitioner's motions or supporting briefs show any recently discovered facts that would cast doubt upon the ability of the three challenged Justices to perform their duties in an unbiased and impartial manner.

Regardless of whether the motions were timely, no grounds exist for any of the three Justices to recuse themselves under either the Code of Judicial Conduct or Idaho law. The Code of Judicial Conduct provides that "A judge shall disqualify himself or herself in a proceeding where the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party or a party's lawyer, or has personal knowledge of disputed evidentiary facts that might reasonably affect the judge's impartiality in the proceedings." This appears to be the ground upon which Petitioner relies in his motions for disqualification.

Petitioner's argument is essentially that Chief Justice Eismann had knowledge of evidentiary facts outside of the record by virtue of his position on the Council, that the Chief Justice was biased against Petitioner, and that the bias is likely to have infected the impartiality of three of the other four Justices deliberating on the case. Petitioner has cited absolutely no facts that would support the contention that the three Justices targeted by the motions for disqualification hold any animus toward Petitioner or that any three of the four remaining Justices somehow obtained knowledge of pertinent facts not contained in the record. It should be noted that this opinion addresses two primary questions. The first question is the interpretation of the words "actually reside," which is a pure question of law. This question is not influenced in any manner by the facts of the case, whether they are contained in the record or elsewhere. The second question is a factual one—whether Petitioner actually resides in the county designated by the Legislature. The three Justices who are the subject of the disqualification

6

motions have no knowledge of facts pertaining to Petitioner's actual residency, except as contained in the record. As will be apparent from the reading of this opinion, almost all of the pertinent facts relevant to this factual determination are based on statements made by Petitioner to Hamlin, testimony given by Petitioner at the Council hearing, or documents signed by Petitioner. The Court specifically advised the parties in several orders issued prior to argument that the case would be decided only upon facts contained in the record and that is precisely what the Court has done.

Whether it is necessary for a judicial officer to disqualify himself in a given case is left to the sound discretion of the judicial officer himself. *Sivak v. State*, 112 Idaho 197, 206, 731 P.2d 192, 201 (1986). A statement of former U.S. Supreme Court Chief Justice William Rehnquist is instructive as to how an appellate judge might make a recusal decision. *See Microsoft Corp. v. United States*, 530 U.S. 1301 (2000). There, the Chief Justice was considering whether he should recuse himself in an appeal where his son was a partner in a firm representing a party in the appeal. Chief Justice Rehnquist considered 28 U.S.C. § 455, a federal statute that sets forth the legal criteria for the disqualification of federal judicial officers. Although the federal statute and its interpretation are not binding on this Court, Chief Justice Rehnquist's statement is instructive because of the similar purpose and language in Canon 3 of the Idaho Code of Judicial Conduct and 28 U.S.C. § 455. Chief Justice Rehnquist stated:

> Section 455(a) contains the more general declaration that a Justice "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As this Court has stated, what matters under § 455(a) "is not the reality of bias or prejudice but its appearance." *Likely v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances.

*Id.* at 1302. According to the Chief Justice, the decision whether a judge's impartiality can "reasonably be questioned" is to be made in light of the facts as they existed, and not as they were surmised or reported. *Id.* Applying this standard to his situation, the Chief Justice declined to recuse himself, concluding that his participation in the case did not give rise to an appearance of partiality. *Id.*

Nor is such the case here. Petitioner has failed to present facts that a reasonable observer could consider in determining that recusal is appropriate. Petitioner merely speculates that Chief Justice Eismann had knowledge of facts outside of the record, which the Chief Justice denied in

7

his sworn affidavit, and that somehow those facts were imparted to three of the four other Justices sitting on his case. He fails to disclose why the fourth Justice was not exposed to the same information. It is interesting to note that Petitioner is suing all four of the remaining Justices in his federal court action, asserting individual claims against each and every one of the four.

Even had Petitioner carried his burden of showing bias or lack of impartiality, three-fourths of the panel need not have recused itself. In *Eismann v. Miller*, 101 Idaho 692, 619 P.2d 1145 (1980), the Court considered whether recusal was appropriate where the appellant in the case before the Court had filed a separate legal action against all members of the Court, as well as a number of trial court judges. The Justices declined to recuse themselves based on the "rule of necessity." According to the Court, "Ordinarily, a member or members of this court engaged in legal action with a party appearing before this court in regard to another matter would voluntarily disqualify themselves. However, this is far from an ordinary situation." *Id.* at 696, 619 P.2d at 1149. The Court continued: "As recognized in *Higer v. Hansen*, 67 Idaho 45, 170 P.2d 411 (1946), where disqualification results in an absence of judicial machinery capable of dealing with the matter, disqualification must yield to necessity. 67 Idaho 50-51, 170 P.2d at 413-14." *Id.* To grant Petitioner's motions for disqualification, even if they had merit, would place the decision of this Court in the hands of five pro tem justices, would require reargument of the case, and would likely produce the same result because the determination of this case will be made strictly on the facts in the record and be based upon the interpretation of the applicable law. Neither the facts nor the law would change with new judicial officers.

## IV. DISCOVERY ISSUES

Petitioner contends that the Council wrongfully failed to respond to his discovery requests. He sought: (a) the identity of the person(s) who prompted the Council investigations; (b) the additional information received by the Council that prompted it to re-open the investigation in 2007; (c) the internal report of the Council's preliminary investigation; (d) all complaints made to the Council against Petitioner; (e) all documents generated and reviewed by the Council in response to those complaints; and (f) the minutes of all Council meetings in which Petitioner's name appears. The Council refused to provide the requested information on the ground that it was confidential pursuant to its Rule 24. Petitioner renewed his request for discovery on a number of occasions before this Court.

8

We need not address the confidentiality issue because it is clear the discovery sought was not and is not relevant to the residency issue upon which this case turns. Rule 22(b) of the Rules of Idaho Judicial Council adopts the discovery rules of the Idaho Rules of Civil Procedure, including Rule 26. Rule 26(b)(1) of those rules limits discovery to "any matter, not privileged, which is relevant to the subject matter involved in the pending action . . ." The discovery sought by Petitioner simply isn't relevant to the legal interpretation of the words "actually reside" nor to the factual determination regarding the location of Petitioner's actual residence. As previously pointed out, almost all of the factual evidence regarding Petitioner's residence was provided in this matter by Petitioner.

Furthermore, Petitioner did conduct discovery in the proceedings before the Council and he had full opportunity to cross-examine witnesses in the Council hearing. If Petitioner believed that he had not been able to obtain and present additional relevant evidence to the Council, he had the option under Idaho Code section 1-2103 to request this Court to permit him to introduce additional evidence for our consideration. Petitioner failed to make such a request and, therefore, the Court's review was, pursuant to the statute, confined to the record of proceedings before the Council.

## V. RIGHT TO CONFRONT ACCUSERS

Petitioner contends that he is entitled to know the identity of the person(s) who prompted the Council investigations because he has a right to confront his accusers. Even though the Executive Director of the Council testified twice under oath in the Council hearing that there was no original complaint or verified statement filed with the Council, Petitioner continues to request discovery of the identity of his accuser. He asserts, "Judge Bradbury has a basic right to know the identity of his accuser and the accusations made." Although he does not expressly state the source of this basic right, we assume that Petitioner is referring to the Sixth Amendment right to confront one's accusers. That Amendment applies to criminal prosecutions, and this is not a criminal prosecution.

Even if it were applicable and even if there were an "accuser," it would not give Petitioner the right to the identity of any such person. No such person testified at the hearing and no information from an informer was contained in the record before the Court. The witnesses at the hearing were Petitioner, the Idaho County Clerk, and Hamlin. Petitioner had ample opportunity to confront those witnesses. He was present when they testified, he questioned

9

them, and he does not contend that he was in any way wrongfully limited in such questioning. If any person provided information that played a part in the Council's investigation, such person was not an "accuser" as that term is used in connection with the Sixth Amendment right "to be confronted with the witnesses against him." No such person was a witness nor was any information that any such person may have provided included in the record. Our findings are based upon the evidence in the record.

## VI. ALLEGED PREJUDICE OF THE JUDICIAL COUNCIL

Petitioner contends that the Council was prejudiced against him. He contends that the alleged prejudice is shown by two facts.

First, the Council's notice of formal proceedings alleged two counts of violations of the Judicial Canons regarding travel expense vouchers when the Council had not previously given Petitioner notice of those allegations. The Council did not make any findings or recommendations regarding those counts. Therefore, that conduct does not indicate prejudice. It may have been different had the Council found violations that were clearly unsupported by the facts and law.

Second, Petitioner contends that the letter dated October 7, 2008, from the Special Examiner hired by the Council shows that the Council had pre-judged the disciplinary proceedings. Petitioner's counsel had inquired whether the Council would be willing to mediate the matter. In response, the Special Examiner wrote back:

> I have passed your suggestion that we mediate the disciplinary case now pending against Judge Bradbury on to the Judicial Council for their review. The Council has authorized me to agree that, if your client admits to having violated I.C. §§ 1-803 and 809 by not actually residing in Idaho County during the past two years (Count I) and agrees to immediately take up full-time residence in Idaho County, we will mediate the question of what sanction should be imposed and drop all other charges.
> The Council feels strongly that Judge Bradbury's refusal to obey the relevant statute, even after having been warned by the Executive Director of the need to do so, cannot be mediated away as if it had never occurred.

Petitioner argues that the second paragraph of the letter shows that the Council had already determined that he did not actually reside in Idaho County. When that paragraph is read in context with the preceding paragraph, it merely states that the Council would not mediate whether Petitioner was required to comply with Idaho Code §§ 1-803 and 1-809. Any mediation would be limited to the sanction imposed if Petitioner admitted the violation.

10

## VII.  THE MEANING OF THE WORDS "ACTUALLY RESIDE"

Idaho Code section 1-803 provides that the resident chambers of one district judge in the Second Judicial District shall be in Idaho County.  Idaho Code section 1-809 provides, "District judges shall actually reside at the place designated as resident chambers."  Petitioner ran for and was elected to the district judge position that was required to establish resident chambers in Idaho County.  The primary issue before us is whether Petitioner actually resides in Idaho County.

Petitioner contends that the term "actually reside" is ambiguous.  It is Petitioner's position that he can actually reside in several different locations at the same time.  In his testimony before the Council he indicated he was actually residing in Grangeville even though he spent six if not seven days per week in another house in another county.  During oral argument it was argued on his behalf that the term only requires physical presence in Idaho County, as infrequently as once every ten years.  He also argued that the word "actually" is mere surplusage and that he has no idea why the Legislature may have used the word "actually" to modify "reside."

In *Sweitzer v. Dean*, we stated the standard for interpreting the language of a statute as follows:

> When interpreting the meaning of the language contained in a statute, this Court's task is to give effect to the legislature's intent and purpose.  In construing a statute, the Supreme Court may examine the language used, reasonableness of the proposed interpretations, and the policy behind the statutes.  It is incumbent upon this Court to interpret a statute in a manner that will not nullify it, and it is not to be presumed that the legislature performed an idle act of enacting a superfluous statute.  The Supreme Court will not construe a statute in a way which makes mere surplusage of provisions included therein.

118 Idaho 568, 571-72, 798 P.2d 27, 30-31 (1990) (citations omitted).  In addition, "Statutory interpretation begins with the 'literal words of the statute,' and those 'words must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole.'"  *Cordova v. Bonneville County Joint Sch. Dist. No. 93*, 144 Idaho 637, 641, 167 P.3d 774, 778 (2007) (citations omitted).

The word "reside" means "to dwell for a long time; have one's residence; live (*in* or *at*)."  Webster's New World Dictionary 1142 (3rd College Ed. 1988).  "Residence" is defined as the "place where one actually lives, as distinguished from a domicile."  Black's Law Dictionary 1335 (8th Ed. 2004).  The word "actually" means "as a matter of actual fact; really."  Webster's

at 14.  Thus, in order to actually reside at his or her resident chambers, a judge is required to actually live in the designated county.  In *Intermountain Health Care, Inc. v. Board of Commissioners of Blaine County*, we defined "residence" as "the place where one *actually lives* or has his home; a person's dwelling place or place of habitation; an abode; the house where one's home is; a dwelling house."  109 Idaho 412, 414, 707 P.2d 1051, 1053 (1985) (quoting *Perez v. Health & Social Services*, 573 P.2d 689, 692 (N.M. 1977) (emphasis added)).

The words "actually reside" or derivatives thereof have long been used in Idaho's legal history.  They appear in section 5 of the Organic Act of the Territory of Idaho, 12 Stat. L. 808, ch. 117(1863), which provided that every "free white male inhabitant" above the age of twenty-one years who was an "actual resident" of the Territory at the time of passage of the act was entitled to vote and eligible to hold office in the Territory.  Upon statehood, article VI, section 2 of the Idaho Constitution provided the right to vote to twenty-one year old male citizens who had "actually resided in the state or territory" for six months.  Idaho Const., art. VI, § 2 (amended 1962).  The words have also been written into a variety of statutes.  In order to qualify for certain scholarship aid, students must "actually reside" in on-campus facilities.  Idaho Code §§ 33-4302 and 33-4032A.  The majority of members of an insurer that operates only in the State of Idaho must "actually reside" in the state.  I.C. § 41-2835(4).  Idaho Code section 50-102, which provides for the manner in which cities may be incorporated, restricts signatures on an initiating petition to qualified electors who are "actual residents" of the territory proposed to be incorporated.  An earlier version of this statute was interpreted by the Court in *Village of Ilo v. Ramey*, 18 Idaho 642, 648, 112 P. 126, 128 (1910).  There, we equated the words "actual resident" with "inhabitant."  An "inhabitant" is "a person who dwells or resides permanently in a place as distinguished from a transient lodger or visitor."  Webster's, at 1163.

Some legislative history is also pertinent to our inquiry.  Prior to 1967, Chapter 8, Title 1, Idaho Code, divided the state into eleven judicial districts.  In 1967, Chapter 8 was repealed and re-enacted to provide for the seven judicial districts the state now has.  1967 Idaho Sess. Laws, ch. 51.  The legislation established the resident chambers for all district judge positions and enacted Idaho Code § 1-809 in its present form.  The short title of the legislation reads, in pertinent part, "PROVIDING FOR THE RESIDENT CHAMBERS OF DISTRICT JUDGES; REQUIRING A DISTRICT JUDGE RESIDE AT RESIDENT CHAMBERS."  Former Idaho Code section 1-901, which was repealed in 1975 (1975 Sess. Laws, ch. 242), had provided that a

district judge "may sit at chambers anywhere within his district." However, the new section 1-809 required district judges to "actually reside" at their resident chambers. It is rather clear the Legislature wanted district judges to live in the county where their resident chambers were located and to be a part of that community.

Virtually every district judge who has been appointed or elected since 1967 has understood that section 1-901 requires that him or her to really live in the county designated as resident chambers. Indeed, there is strong evidence in the record that Petitioner understood this to be the case when he ran for the Idaho County position. Petitioner testified that he bought a house in Grangeville, that he took out a homestead exemption on that house and still maintained the exemption as of the time of the Council hearing on December 17, 2008, and that he registered to vote in Idaho County. Petitioner would not have taken a homestead exemption and registered to vote in Idaho County unless he clearly understood that this county was to be his primary residence.

A district judge is "presumed to know the law." *State v. Leavitt*, 121 Idaho 4, 6, 822 P.2d 523, 525 (1991); *City of Lewiston v. Frary*, 91 Idaho 322, 327, 420 P.2d 805, 810 (1966). It necessarily follows that district judges must also comply with the law. Thus, we must assume that Petitioner understood the significance of obtaining and maintaining a homeowner's exemption and of voting in Idaho County.

Idaho Code section 63-602G(1) allows for the exemption of a person's homestead as that term is defined in Idaho Code section 63-701(2). A homestead is "the dwelling, owner-occupied by the claimant . . . . and used as the primary dwelling place of the claimant." I.C. § 63-701(2). Idaho Code section 63-602G(2)(a) specifies that the exemption may be granted only if the homestead is owner-occupied and used as the primary dwelling place of the owner. Subsection 2(c)(ii) requires the owner to certify to the county assessor that the homestead is his "primary dwelling place." Subsection 2(f) states that the definition of "primary dwelling place" is the same as that in Idaho Code section 63-701(8). The latter provision says the primary dwelling place is:

> the claimant's dwelling place on January 1 or before April 15 of the year for which the claim is made. The primary dwelling place is the single place where a claimant has his true, fixed and permanent home and principal establishment, and to which whenever the individual is absent he has the intention of returning. A claimant must establish the dwelling to which the claim relates to be his primary

13

dwelling place by clear and convincing evidence or by establishing that the dwelling is where the claimant resided on January 1 or before April 15 and:

(i)     At least six (6) months during the prior year; or

(ii)    The majority of the time the claimant owned the dwelling if owned by the claimant less than one (1) year; or

(iii)   The majority of the time after the claimant first occupied the dwelling if occupied by the claimant for less than one (1) year.

Idaho Code section 63-701(6) defines "occupied" as meaning "actual use and possession." An owner need only apply once for homeowner's exemption, but must maintain eligibility on a yearly basis. I.C. § 63-602G(3). The current version of the homeowner's exemption was enacted in 2006. The earlier versions of the statute did not use the word homestead, but did require that the property be the primary dwelling place of the owner. Being a judicial officer, with full knowledge of the law, Petitioner would certainly not have applied for a homeowner's exemption on the Idaho County house unless he clearly understood that it was to be his primary dwelling place and that he was to maintain it as such for each subsequent year. Although one could certainly question his subsequent compliance with the foregoing statutes, that is a matter for pursuit, if any, by county officials (see Idaho Code section 63-602G(5), which empowers county officials to seek recovery of tax revenues lost to improperly claimed homeowner's exemptions) and not the subject of our present inquiry.

Unless Petitioner understood that Idaho County was to be and remain the location of his primary residence, he would not have registered to vote and continued to vote in that county. According to Idaho Code section 34-107:

(1) Residence," for voting purposes, shall be the principal or primary home or place of abode of a person. Principal or primary home or place of abode is that home or place in which his habitation is fixed and to which a person, whenever he is absent has the present intention of returning after a departure or absence therefrom, regardless of the duration of absence.

* * *

(4) A qualified elector shall not be considered to have gained a residence in any county or city of this state into which he comes for temporary purposes only, without the intention of making it his home but with the intention of leaving it when he has accomplished the purpose that brought him there.

Indeed, the registration form signed by Petitioner on October 16, 2003, states:

UNDER PENALTY OF LAW: By signing this card, I certify that I am a citizen of the United States and that I shall have been a resident of Idaho and the county for 30 days before the next election at which I vote . . .

It is obvious that Petitioner would not have signed a false certificate and equally obvious that he understood Idaho County was to be his primary home and fixed habitation. Although the evidence indicates that his subsequent compliance with the voting requirements is less than ideal, that is a matter for other authorities.

One further fact demonstrates that Petitioner understood he was required to actually reside or really live in Idaho County. During his testimony at the Council hearing, he acknowledged having asked the Legislature to amend Idaho Code section 1-803 so he could reside in Clearwater County. If, as Petitioner has contended, he can actually reside in several different counties at the same time, there would be no need to obtain such a change in the law.

While it is clear that Petitioner initially understood he was required to live in Idaho County, the record reflects that he was not doing so during the period preceding the time he was interviewed by Hamlin. It is not clear from the record when Petitioner began using his Lewiston house as his primary residence. What is clear is that he was not complying with the residence requirements of Idaho Code sections 1-803 and 1-809 when these proceedings were initiated because he was living in Nez Perce County.

At some point Petitioner actually claimed Nez Perce County as his principal residence. This occurred when he registered his vehicles in Nez Perce County. The record does not clearly reflect when this occurred. Petitioner testified that as of December 17, 2008, his vehicles were registered in Nez Perce County. Idaho Code section 49-401B(5) provides in pertinent part:

> Every owner of a vehicle registered by a county assessor shall give his principal residence or domicile address to the assessor so that the proper county can be entered upon the registration. Failure to do so shall be unlawful....For the purpose of vehicle registration, a person is an actual and permanent resident of the county in which he has his principal residence or domicile. A principal residence or domicile shall not be a person's workplace, vacation, or part-time residence.

It is not entirely clear how one might reconcile this inconsistent certification but, again, this is a matter for consideration by other authorities and not particularly pertinent to the present inquiry.

In sum, Petitioner is required pursuant to Idaho Code sections 1-803 and 1-809 to actually reside in Idaho County. That means he must maintain his primary residence in Idaho County, that he must be an inhabitant of Idaho County, and that he must really live in Idaho

15

County.  The evidence in the record indicates that he has not been actually residing in Idaho County for some time and this must change.

## VIII. CONSTITUTIONAL DUTY

A number of times during these proceedings, commencing with his interview by Hamlin, Petitioner has contended that living in Idaho County interferes with his ability to carry out his constitutional duty.  He does not identify the constitutional provision that would trump the statutory requirement that he reside in Idaho County.  The argument displays a fundamental misunderstanding of the pertinent constitutional provisions.

While Idaho's judicial system is a separate branch of government, it depends upon the Legislature for funding.  Article V, section 11 of the Idaho Constitution divides the state into five judicial districts but provides that "the legislature may reduce or increase the number of districts, district judges and district attorneys."  The Legislature may use its power over the purse strings to fund a particular district judge position in a particular locale.  It has chosen to do so by virtue of Idaho Code sections 1-803 and 1-809.  For better or for worse, this is a political decision that is within the legislative prerogative.  Those who are familiar with the political situation in the less populated counties of Idaho are aware of the jockeying that goes on when the Supreme Court notifies the Legislature of the need for an additional judge in a particular district and suggests where the same might be chambered.  The Court certainly has the ability to suggest the proposed location where the district judge is most needed, but the Legislature takes the matter from there and the counties often enter into fierce competition to have the judge housed in their county, rather than the adjoining county.  County residents have a strong interest in having a judge live and work in their community and the exact location where that will occur is a political decision conferred by the Constitution upon the Legislature.  While the Legislature's decision as to which district judge position will be funded and where it will be located may not always coincide with what is ideal from an administrative standpoint, it is not for the courts to second guess or circumvent such decisions.

Once a district judge is appointed to live in a particular county, the Idaho Supreme Court exercises its constitutional responsibility to administer and supervise the work of the district judge.  Art. V, § 2 of the Idaho Constitution provides that, "The courts shall constitute a unified and integrated judicial system for administration and supervision by the Supreme Court."  As we stated in *Eismann v. Miller*, this provision "places the obligation and power to administer and

16

supervise the judicial system of this state squarely upon the shoulders of this court." 101 Idaho at 697, 619 P.2d at 1150. The Idaho Supreme Court, being vested with power to administer and supervise the entire court system, is responsible for delineating the duties of district judges and specifying how those duties will be performed. Nothing in our constitutional system allows an individual district judge to determine, on his own, what his duties are and how they will be performed. Our constitutional system does not allow any district judge of this State to ignore specific statutory provisions by claiming them to be trumped by some undefined constitutional duty. No judge is above the law.

## IX.    VIOLATION OF CODE OF JUDICIAL CONDUCT AS GROUNDS FOR DISCIPLINE

The Council concluded:

> That District Judge John H. Bradbury's failure to actually reside in Idaho County, is wilful and is a violation of Idaho Code of Judicial Conduct Canon 1(A) and 2(A) and pursuant to Idaho Code § 1-2103, is wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into dispute.

Petitioner contends that a violation of the Code of Judicial Conduct cannot be a basis for discipline. He argues that grounds for discipline are limited to a violation of Idaho Code section 1-2103. That statute provides, in part, that a justice or judge may be disciplined or removed "for wilful misconduct in office . . . or conduct prejudicial to the administration of justice that brings judicial office into disrepute." This Court adopted the Code of Judicial Conduct to establish standards for ethical conduct by Idaho judges. A violation of the Code may constitute wilful misconduct in office or conduct prejudicial to the administration of justice that brings judicial office into disrepute. *Becker*, 122 Idaho at 293-94, 834 P.2d at 295-96. We point out, however, that when a petition has been filed in this Court to review the Council's determination, this Court decides whether the judge's conduct constitutes grounds for discipline.

While the Council determined that Petitioner's actions were in violation of the Code of Judicial Conduct, it recommended little in the way of disciplinary action. It did not censure the Petitioner or recommend that he be unconditionally deprived of his office. Rather, the Council adopted a no harm, no foul approach, recommending that he be suspended from acting as a district judge until he changed his place of actual residency to Idaho County. The Council recognized that no such suspension would take place unless ordered by the Court. The Council

also recommended that Petitioner be required to pay the costs incurred by the Council in investigating and litigating the proceeding.

We find that it is appropriate to adopt a no harm, no foul approach in order to accomplish the objective of enforcing the legislative decision to locate Petitioner's position in Idaho County. Having determined that a common sense interpretation of "actually reside" requires that Petitioner establish and maintain his primary residence in Idaho County, we need not take the additional step of determining whether Petitioner violated the Code of Judicial Conduct. It would serve no purpose. Petitioner stated in the Council hearing and his attorney reiterated in his presentation to this Court that Petitioner would comply with this Court's determination as to where the Legislature required that he live. So long as Petitioner carries through with these representations, the matter will be satisfactorily resolved.

## X.  THE APPROPRIATE RESOLUTION

We hereby order that within twenty-one (21) days of the release of this opinion, Petitioner must (1) establish his primary residence in Idaho County and (2) submit to the Court an affidavit stating that he is actually residing in Idaho County and will continue to actually reside in Idaho County so long as he is required to do so by law. Upon Petitioner's compliance with this Order, we will not require that he reimburse the Council for its costs incurred in this matter. A final Order will issue upon fulfillment of these compliance terms. If compliance is not forthcoming within said 21-day period, we will revisit this Order.

Justices BURDICK and W. JONES, **CONCUR**

KIDWELL, J. Pro Tem, dissenting in part:

Respectfully, I disagree with the majority Opinion's resolution (section X) of this matter and the analysis of the words actual residence (section VII).

Actual residence when required by a statute is more readily subjectively discussed, than objectively defined. Whether utilizing "common sense" or "clear meaning of the statute" or "intent of the drafters," it seems apparent that there must be some period of physical presence at a specific physical location. Further narrowing of the definition or historical analogies includes subjective determinations not in the record before us.

Judge Bradbury has two residences or homes in Idaho; one in Idaho County (Grangeville) and one in Nez Perce County (Lewiston). The relevant statute requires actual residence in Idaho County. However, having two or more homes in Idaho is not precluded.

18

It is important to note before addressing the residence issue, that neither the record presented or the majority opinion suggests any shirking of his job. On the contrary it appears that Judge Bradbury is dutifully carrying out the responsibilities to which he has been constitutionally elected.

The controversy arises here because the Judicial Council raised the question of whether the judge actually resides in Grangeville because he spends approximately one or two days a week at his home there. Judge Bradbury testified in deposition that he spends more time on the road or at his home in Lewiston than at his home in Grangeville, because of the duties and demands of traveling throughout his judicial district.

The record indicates that Judge Bradbury, upon being elected as District Judge, purchased a home in Grangeville (he had owned a ranch in the county in previous years). Subsequently he took out a homeowner's exemption and signed the requisite forms indicating his intent to make that his primary home. He also began voting from Grangeville, and he pays taxes and gets his judicial mail in Grangeville.

Based on the conflicting and limited information presented, I am unable to conclude that Judge Bradbury is in violation of Idaho's residency requirement statute. This matter should be dismissed at this time, but without prejudice to the Judicial Council's right to proceed with additional information if it decides to do so.