# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51244

| | | |
|---|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD; ST. LUKE'S REGIONAL MEDICAL CENTER, LTD; CHRIS ROTH, an individual; and NATASHA D. ERICKSON, M.D., an individual, and TRACY W. JUNGMAN, N.P., an individual, | ) ) ) ) ) ) | |
| Plaintiffs-Respondents, | ) ) | |
| v. | ) ) | Boise, November 2025 Term |
| DIEGO RODRIGUEZ, an individual, | ) ) | Opinion Filed: February 10, 2026 |
| Defendant-Appellant, | ) ) | Melanie Gagnepain, Clerk |
| and | ) ) | |
| AMMON BUNDY, an individual; AMMON BUNDY FOR GOVERNOR, a political organization; FREEDOM MAN PRESS, LLC, a limited liability company; FREEDOM MAN PAC, a registered political action committee; and PEOPLE'S RIGHTS NETWORK, a political organization and an unincorporated association, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Lynn Norton, District Judge; Nancy Baskin, District Judge.

The judgment of the district court is <u>affirmed</u>.

Diego Rodriguez, Appellant *pro se*, submitted argument on the briefs.

Holland & Hart, LLP, Boise, for Respondents St. Luke's Health System, Ltd, St. Luke's Regional Medical Center, Ltd, Chris Roth, Natasha D. Erickson MD, and Tracy W. Jungman NP. Erik F. Stidham argued.

_____

MEYER, Justice.

This is an appeal from a judgment in favor of St. Luke's Health System, Ltd.; Chris Roth, the CEO of St. Luke's; Natasha D. Erickson, MD, and Tracy W. Jungman, Nurse Practitioner, medical providers in the hospital's employment (collectively "St. Luke's"), against Diego Rodriguez and associated entities connected with Ammon Bundy and the "People's Rights Network" ("PRN"). The district court entered a default as to liability to sanction Rodriguez for repeated discovery violations. Rodriguez represented himself throughout the case. The district court then held a jury trial solely to determine damages, which resulted in a $52.5 million verdict in favor of St. Luke's. The court also entered a permanent injunction, restricting Rodriguez from making further defamatory statements or harassing St. Luke's and its medical providers. Rodriguez appeals the judgment and injunction, asserting both judicial and jury bias, denial of due process, and constitutional free speech violations. For the reasons set forth below, we affirm the judgment of the district court.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This appeal comes to our court following a series of delays, missed deadlines, and other procedural misconduct by Rodriguez that occurred in the case below. In 2022, the Idaho Department of Health and Welfare ("IDHW") placed Rodriguez's ten-month-old grandson into protective custody for severe malnutrition. St. Luke's healthcare providers, Dr. Erickson and Nurse Jungman, treated the child for dehydration and failure to thrive. During this time, Rodriguez publicly accused St. Luke's and its medical providers of participating in a conspiracy to kidnap, traffic, and harm children, using his media platform "Freedom Man Press," political committees, and social media to disseminate his accusations. The communications prompted public protests and threats against St. Luke's administrators and medical providers and caused disruptions at St. Luke's medical facilities.

On May 11, 2022, St. Luke's filed suit against Rodriguez, Bundy, and the associated entities connected with Bundy and Rodriguez, alleging claims of defamation, invasion of privacy, intentional infliction of emotional distress, common law trespass, statutory trespass, and civil conspiracy. St. Luke's alleged that Rodriguez and Bundy launched "a knowingly dishonest and baseless smear campaign" that misrepresented the child's status, the care provided, and the circumstances leading to IDHW's intervention, and ultimately accusing St. Luke's and its medical providers (along with other state officials) of participating in a conspiracy to kidnap, traffic, and

2

kill Idaho children. They alleged that the "[d]efendants defamed the supposed members of the kidnapping and child trafficking ring and then incited their followers by stating that countless children, like [Rodriguez's grandson], would be kidnapped, trafficked, and potentially killed unless immediate action was taken to destroy the St. Luke's Parties and others." These actions, St. Luke's alleged, were intended to (1) enhance Rodriguez's and Bundy's standing among their followers, (2) grow their social presence, and (3) aid in their plan to solicit over $115,000 in donations based on misrepresentations that the infant's family faced significant medical debt. St. Luke's amended complaint requested compensatory and punitive damages exceeding $250,000 per defendant, disgorgement of funds raised through deceptive solicitations, injunctive relief to stop further defamatory publications, removal of false materials, and recovery of attorney fees and costs. They also demanded a jury trial on all claims.

Along with the initial complaint, St. Luke's contemporaneously filed a motion for preliminary injunction, a motion to expedite discovery, and a motion for a protective order. St. Luke's motion to expedite discovery requested leave to serve Rodriguez with five expedited interrogatories to discover factual information relevant to their preliminary injunction, such as information regarding the ownership and management of websites that published defamatory statements about St. Luke's, the identity of persons who wrote and posted those statements, and information relating to the structure and agents of Freedom Man Press and People's Rights Network for service of process. St. Luke's motion for a protective order requested an order "prohibiting harassment, intimidation, or threats towards the St. Luke's Parties, Mr. Roth, Dr. Erickson, potential witnesses, and individuals related to the controversy," by Rodriguez, Bundy, "and third-parties acting in concert with or at the direction or encouragement of" Rodriguez and Bundy.

On July 12, 2022, the district court granted St. Luke's motion for expedited discovery and ordered Rodriguez to respond to the interrogatories by August 5, 2022. The next day, on July 13, 2022, the district court also granted St. Luke's motion for service of the complaint by publication and issued a summons by publication.

Rodriguez subsequently filed an answer to the complaint and a notice of appearance on September 6, 2022, but he failed to respond to the interrogatories. This prompted St. Luke's to file a motion to sanction Rodriguez pursuant to Idaho Rule of Civil Procedure 37(b)(2) (which provides for sanctions where a party disobeys a court's discovery orders) and hold Rodriguez in

contempt. St. Luke's requested an order compelling Rodriguez to submit to a limited deposition regarding the interrogatories, among other sanctions. The district court granted St. Luke's motion to compel Rodriguez to submit to a limited deposition and warned Rodriguez that he would be subject to additional sanctions if he failed to attend the subsequently scheduled deposition, including a possible finding of contempt. The court also awarded the costs and fees St. Luke's incurred to bring the motion to compel and ordered Rodriguez to pay the costs of the deposition. The district court declined to address St. Luke's motion for contempt after Rodriguez did not appear for the hearing on the motion to compel.

St. Luke's then attempted to schedule Rodriguez's deposition. After Rodriguez provided evasive answers concerning his whereabouts, a deposition was scheduled to take place by Zoom on October 5, 2022. In an email to St. Luke's counsel, Rodriguez indicated that he had submitted answers to the interrogatories, that he objected to the order requiring him to pay for the deposition, and accused St. Luke's of "actively and daily engaging in child trafficking—taking money for babies that are put in their care after being kidnapped by force, and . . . profiting off of it." He further stated that St. Luke's counsel would "stand before God for [his] crimes." The day before the deposition, Rodriguez sent an email to his supporters encouraging an undisclosed group to log into the deposition and provided the Zoom link. The email provided, in pertinent part, that: "[s]howing up on the Zoom call is like the virtual version of showing up to a court hearing to sit in the audience—it shows your support"; "criminal bullies like [St. Luke's counsel] are accustomed to getting away with murder because nobody ever fights back"; and "it's time we fought back."

After learning of Rodriguez's email, St. Luke's filed a motion for sanctions and for a protective order to limit attendance at depositions pursuant to Idaho Rule of Civil Procedure 26(c). St. Luke's counsel emailed Rodriguez, informed him that "[t]here is no public right to attend depositions[,]" and demanded that Rodriguez withdraw his direction to his supporters to log on to the Zoom deposition. Rodriguez refused, stating that the deposition would "be attended by invited friends and family of mine who are acting as my 'representatives.'" After St. Luke's created a new Zoom link for the deposition, Rodriguez emailed the new link and password to the undisclosed group.

Rodriguez subsequently participated in a limited virtual deposition and answered questions related to the expedited discovery order. At that deposition, Rodriguez testified that he resided in

4

Florida but would not specifically identify an address. The record does not indicate whether Rodriguez's supporters joined the deposition. However, at St. Luke's request, the district court subsequently entered an order limiting attendance at depositions to legal counsel, the individual parties, and a single designated representative of the legal entity parties.

St. Luke's subsequently served Rodriguez with requests for production and new interrogatories. Rodriguez failed to produce most of the requested documents and submitted incomplete answers to multiple interrogatories, objecting to routine requests on relevancy and privacy grounds. Despite his objections, Rodriguez did not seek a protective order from the district court. St. Luke's also scheduled a two-day deposition of Rodriguez to take place in December 2022 and offered to hold the deposition in Orlando, Florida (where Rodriguez had relocated) or in Mexico (where Rodriguez indicated he travelled for business). In response, Rodriguez stated that he would not attend an in-person deposition and that he would "give [St. Luke's] a maximum of 4 hours on Tuesday, January 10th." In this email, he also labeled St. Luke's counsel as "probably a pedophile" and a supporter of "homosexual perversion." Thereafter, on December 6, 2022, St. Luke's filed a motion to compel Rodriguez to (1) fully answer its interrogatories and respond to its requests for production, (2) produce documents and information he agreed to provide during his October 5, 2022, deposition, and (3) appear in-person for a deposition in December.

On December 20, 2022, the district court held a hearing on St. Luke's motion for a protective order. During the hearing, the district court instructed Rodriguez that if he wished to appear by video for anything other than a status conference, he was required to file a request for approval. Rodriguez confirmed his understanding and agreed to submit such requests for future hearings, stating, "Okay, then I'll make sure I get that done for each time going forward." Before ending the hearing, the district court reiterated that the request must be made a few days in advance so that a courtroom could be arranged for video participation:

> [DISTRICT COURT:] Mr. Rodriguez, if you want to appear at that hearing by video conference, you actually have to make a specific request, because for the very reason that you can't hear particularly well today is why we need to know in advance, like a couple of days in advance, to get a courtroom assigned where we can actually make sure that the audio is such that everyone can participate if there are some attending by video conference.
>
> MR. RODRIGUEZ: Sounds good.

St. Luke's counsel sent Rodriguez notice that a deposition was set to commence on January 10, 2023, in Orlando, Florida. Counsel also contacted Rodriguez via email regarding the deposition

on December 21, 2022, and January 3, 6, and 8, 2023. Rodriguez did not inform St. Luke's that he was refusing to appear at the deposition, and did not seek a protective order regarding the deposition. After St. Luke's counsel flew to Orlando to conduct the deposition, Rodriguez failed to appear.

On January 6 and 9, 2023, St. Luke's filed two supplemental affidavits of counsel in support of its December 6, 2022, motion to compel, which included as an exhibit a video posted on Rodriguez's "Freedom Man" website. According to St. Luke's counsel, in the video, Rodriguez stated he had been holding back volumes of evidence pertaining to the alleged corruption and criminality of St. Luke's and others:

> I have actually been holding a lot of things back. I actually have stacks of research, unpublished articles, unknown details, unseen videos, and volumes of evidence showing the total corruption, dishonesty, misconduct, and downright criminality of Meridian police officers, St. Luke's hospital, doctors, politicians, judges, CPS employees, social workers, but most of all, the Idaho Department of Health and Welfare, who is the most depraved, disgusting, dishonest, degenerate, and devilish of them all. . . . Now, for reasons which you're going to understand shortly, I had to keep back much of this information until now. But much like the 'Twitter files' that have slowly been released by Elon Musk in recent weeks, I am slowly going to be releasing new information and evidence that you have never before seen. Now this will include body cam footage from these corrupt Meridian police officers who kidnapped my grandson, showing them breaking the law, and I'm also going to release never-before-seen footage of these same officers plotting and planning to illegally arrest Ammon Bundy, my friend, which they later did, in defiance of the law. . . . Watch your email inbox because the fireworks are going to get started this week.

Following a hearing on St. Luke's motion to compel, which Rodriguez did not attend, the district court granted St. Luke's motion on February 8, 2023. In its decision, the court analyzed each of Rodriguez's responses to the interrogatories and concluded that Rodriguez had not fully responded and that Rodriguez's objections were without merit. The court ordered Rodriguez to submit to a two-day, in-person deposition between February 25, 2023, and March 25, 2023, and warned Rodriguez that his "[f]ailure to comply with this Order can result in sanctions listed in Idaho Civil Rule of Procedure 37(b) which may include: . . . striking pleadings in whole or in part . . . [and] rendering a default judgment against the disobedient party[.]"

Six days later, Rodriguez stated in an email to St. Luke's counsel that he "reject[ed] the notion of needing 2 days for a deposition" and that counsel was "simply trying to rack up billable hours in [his] endless gamesmanship and dishonorable evil actions . . . ." He further stated that he

would "make [him]self available" for the deposition "in Curitiba, Paraná, Brazil on March 24th and 25th." In response, St. Luke's counsel informed Rodriguez that Brazil did not permit international depositions and, therefore, it was not a viable option. Rodriguez replied that the court's order granting the motion to compel only required that he disclose the city, state, and country he would be located in and that, "[i]f the Brazilian authorities arrest you . . . we should just consider that JUSTICE for all of your lies, corruption, and wickedness."

St. Luke's subsequently filed a motion to sanction Rodriguez for failing to provide viable dates for his deposition, demanding that the deposition take place in Brazil, and failing to provide the written discovery responses and documents as required by the court's order. St. Luke's argued that Rodriguez's pattern of intentional delay and violations of court orders frustrated the legal process and prejudiced the prosecution of its case. St. Luke's requested that default be entered against Rodriguez pursuant to Idaho Rule of Civil Procedure 37(b). In response, Rodriguez argued that "[t]he deposition was never 'frustrated'" because St. Luke's counsel could "simply have the deposition via Zoom" if counsel "d[oes] not want to travel to have a deposition in the city, state, and country where I am located when I am available for the deposition[.]" His response, however, did not address the failure to answer or supplement his responses to the interrogatories and requests for production.

Following a hearing on St. Luke's motion for sanctions, which Rodriguez did not attend, the district court granted St. Luke's motion for sanctions against Rodriguez for failing to comply with its orders on April 25, 2022. Rather than entering a default, the district court instead ordered Rodriguez to personally attend a deposition in Boise and appointed a discovery referee "to resolve discovery disputes between [St. Luke's] and Rodriguez during the deposition[.]" The court again ordered Rodriguez to fully answer or supplement his responses to St. Luke's interrogatories and awarded St. Luke's costs and fees.

On May 2, 2023, St. Luke's filed a motion for contempt against Rodriguez for violating the protection order issued by the court on January 19, 2023, which prohibited Rodriguez from intimidating, threatening, or harassing witnesses or potential witnesses. The motion included supporting declarations and copies of numerous online articles attributed to Rodriguez, many of which targeted the court personally. One article on the Freedom Man website, dated April 18, 2023, accused the district court judge, by name, of being "Biased and Malicious" and "Unfit to Preside Over Our Case." The imagery accompanying these articles depicted Judge Norton in

7

antagonistic portrayals, including one featuring a webpage banner labeling her alongside two other individuals in bed together with demeaning nicknames, and another, on "St. Luke's Exposed," showing a red-faced Judge Norton shooting laser beams from her eyes at a burning United States Constitution.

One week later, Rodiguez filed a petition to join the efforts of Ammon Bundy (who had not appeared in this case) to remove the case to federal court, which resulted in an automatic stay of the state court proceedings. St. Luke's filed a motion to dismiss or remand in the federal district court, arguing that subject matter jurisdiction did not exist and that Bundy had only removed the case to obstruct the state court proceedings. St. Luke's also filed a new motion seeking to sanction Rodriguez in the state court proceedings for his ongoing refusal to comply with court orders and discovery obligations. On May 19, 2023, the federal court remanded the case to state court for lack of subject matter jurisdiction and due to multiple procedural defects in the removing parties' filings. The federal court also admonished Rodriguez and the other removing parties that, "[w]hile zealous advocacy is always anticipated, the [c]ourt takes great umbrage when parties denigrate or threaten opposing parties or counsel."

The night before the contempt hearing in district court, on May 22, 2023, Rodriguez filed a document entitled "Notice of Removal" with the federal court, despite the federal district court's earlier remand of the case to the state court. In that document, Rodriguez argued that the federal court ignored his petition and that the court's ruling was "spurious and specious." In an email to Rodriguez, St. Luke's counsel stated that the removal attempt was frivolous and accused Rodriguez of intentionally delaying the state court proceedings. In response, Rodriguez asked counsel why he "hate[d] obedience to the law[,]" why he "commit[ed] crimes repeatedly[,]" and whether he was a "sociopath" or "psychopath," among other things. He further told counsel to "[s]top being a fag" and "REPENT." Several days later, the federal court dismissed Rodriguez's "notice of removal" as moot.

On May 26, 2023, St. Luke's filed a motion for sanctions against Rodriguez after he failed to appear at the court-ordered deposition in Boise. St. Luke's again requested that the district court enter default and disallow any evidence at trial that was withheld in discovery. Rodriguez did not respond to St. Luke's motion. Several days later, St. Luke's filed a motion with the discovery referee requesting an order to compel Rodriguez to immediately supply the requested discovery and sit for a deposition by June 9, 2023.

The day before the rescheduled contempt hearing was to take place, Rodriguez filed a brief in opposition to the motion for contempt. The next day, on June 6, 2023, the district court issued a warrant of attachment against Rodriguez personally pursuant to Idaho Rule of Civil Procedure 75 after Rodriguez failed to appear at the contempt hearing. The court determined, among other things, that there was probable cause that Rodriguez was in contempt of its preliminary injunction, protective order, and discovery orders. This warrant remains outstanding. That same day, Rodriguez failed to submit a witness list, exhibit list, or proposed jury instructions as required by the district court's scheduling order and failed to appear at the pretrial conference.

Thereafter, on June 13, 2023, the district court granted St. Luke's motions for sanctions against Rodriguez for failing to appear at a properly noticed deposition and his refusal to comply with court orders and discovery obligations. Consequently, the district court entered an order striking Rodriguez's pleadings and granting a default against Rodriguez, which stated:

An Order of Default is entered against Diego Rodriguez.

This [c]ourt will deem admitted any factual allegations pled by [St. Luke's] in the Fourth Amended Complaint against Diego Rodriguez;

This [c]ourt will make a determination of damages based on supporting evidence submitted by [St. Luke's] at the default damages hearing since the claims are not for a sum certain; and

This court will not consider opposing argument or evidence from Diego Rodriguez during a default damages hearing.

On June 21, 2023, Judge Norton issued an order of voluntary disqualification, and the case was reassigned to a new district court judge, Judge Nancy Baskin. The order is not part of the record, and there is no direct explanation of the reasons for Judge Norton's recusal.

St. Luke's subsequently filed two motions for reconsideration of the court's June 13, 2023, orders, requesting the court reconsider the portion of the orders prohibiting Rodriguez from presenting arguments and otherwise participating at the trial on damages, subject to default and evidentiary sanction. In addition, St. Luke's requested that a jury trial still be held on damages.

Following a hearing, Judge Baskin granted the motions for reconsideration, changing the default judgment hearing to a jury trial on damages. The court explained that the amended sanctions against Rodriguez were to ensure his due process rights to challenge jury-determined damages at the trial. The district court also partly granted St. Luke's motion for reconsideration of the June 13, 2023, sanctions order, allowing all defendants to participate in the jury trial if they appeared in person. This order provided in relevant part:

9

- *All Defendants may participate in the jury trial if they appear in person*. A Defendant that represents an entity must be represented by an attorney licensed to practice law in Idaho. A pro se litigant who is not an Idaho licensed attorney may not represent a Defendant that is an entity. Counsel are required to file a notice of appearance prior to July 10, 2023 if appearing in this action on behalf of a Defendant. The appearance of a counsel will not be a basis to continue the jury trial which has been set for July 10, 2023 by prior Orders.

- A Defendant who appears in person at trial must attend *all* trial days, beginning on the first day. If a Defendant does not appear on the first trial day, that Defendant will be deemed by the [c]ourt to have waived his/its right to participate in the trial and will not be permitted to appear on later trial days. If a Defendant appears on the first day but fails to appear on any of the following trial days, that Defendant will be deemed by the [c]ourt to have waived his/its right to participate in the trial and will not be permitted to appear on later trial days;

- *All Defendants will be permitted to participate in jury selection, subject to the limitations and restrictions*:

- All Defendants will be permitted to present an opening statement and closing argument, subject to the limitations and restrictions;

- All Defendants will be permitted to cross-examine witnesses, subject to the limitations and restrictions; and

- [St. Luke's] will be permitted to file Requests for Admission, to be deemed admitted, pursuant to Idaho Rule of Civil Procedure 36(d).

(All but second emphasis added; footnote omitted.)

On Sunday, July 9, 2023, at 10:33 p.m., before jury selection was scheduled to begin the following morning, Rodriguez filed a notice requesting remote video access. The district court denied the request as untimely and because he and other trial participants had been previously ordered to appear in person.

On July 10, 2023, jury selection began as scheduled. Before jury selection, the district court removed "nine potential jurors who either were currently employed by St. Luke's or [had] a spouse or significant other . . . employed by St. Luke's . . . for cause to avoid any appearance of conflict of interest . . . ." After Rodriguez failed to appear in person for jury selection, the district court stated to the jury panel that "[t]his case is somewhat unusual as the defendants have elected not to participate in the jury trial." The next day, Rodriguez requested that the court provide him the names of the selected jurors and their alternates, stating he wanted "to determine if these jurors are truly unbiased or not." The district court denied his request, noting that he failed to appear at trial and that he could "purchase a written transcript or audio recording of the court proceedings."

Following a seven-day trial, the jury returned a verdict in favor of St. Luke's, awarding $52.5 million in compensatory and punitive damages. These damages were awarded jointly and severally against Rodriguez and the other co-defendants. The district court also issued a permanent injunction enjoining Rodriguez from "posting and disseminating defamatory statements" against St. Luke's and "disseminating and encouraging others to disseminate" contact, personal information, and images of Mr. Roth, Dr. Erickson, and nurse Jungman. The court further ordered Rodriguez to "[r]emove from all online locations and websites . . . the contact information, personal information, and/or images of Mr. Roth, Dr. Erickson, and [Nurse] Jungman." Rodriguez timely appealed.

## II.    STANDARDS OF REVIEW

The imposition of sanctions for violating a court order is within the district court's discretion. *See Lands v. Sunset Manor, LP*, 173 Idaho 658, 665, 546 P.3d 670, 677 (2024). Likewise, "[w]hether it is necessary for a judicial officer to disqualify himself in a given case is left to the sound discretion of the judicial officer himself." *Zylstra v. State*, 157 Idaho 457, 460–61, 337 P.3d 616, 619–20 (2014) (quoting *Bradbury v. Idaho Jud. Council*, 149 Idaho 107, 113, 233 P.3d 38, 44 (2009)). Furthermore, "we review the trial court's selection of jurors for an abuse of discretion." *Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 141, 937 P.2d 1212, 1215 (1997) (citations omitted). This Court applies a four-part test to determine if a district court abused its discretion: whether the court (1) correctly perceived the issue as discretionary; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Breckenridge Prop. Fund 2016, LLC, Wally Enters., Inc.*, 170 Idaho 649, 662, 516 P.3d 73, 86 (2022) (citing *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

The Idaho Appellate Rules require that the parties' arguments "shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6). "If an appellant fails to 'assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by this Court.'" *PHH Mortg. v. Nickerson*, 164 Idaho 33, 38, 423 P.3d 454, 459 (2018) (quoting *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 323, 297 P.3d 1134, 1140 (2013)). "This Court will not consider general attacks on the district court's conclusions absent specific reference to

evidentiary or legal errors." *Id.* (citation modified). "Arguments of this type are deemed to have been waived." *Id.* (citation omitted). Furthermore, "[t]his Court will not consider issues raised for the first time on appeal." *Id.* at 41, 423 P.3d at 462 (quoting *Watkins Co. v. Est. of Storms*, 161 Idaho 683, 685, 390 P.3d 409, 411 (2017)).

"This Court has long held that although litigants have the right to represent themselves, '[p]ro se litigants are held to the same standards and rules as those represented by an attorney.'" *Sankey v. Ivey*, 172 Idaho 574, 581, 535 P.3d 198, 205 (2023) (alteration in original) (quoting *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009)). Therefore, "[p]ro se litigants are not accorded any special consideration simply because they are representing themselves and are not excused from adhering to procedural rules." *Michalk*, 148 Idaho at 229, 220 P.3d at 585 (quoting *Nelson v. Nelson*, 144 Idaho 710, 718, 170 P.3d 375, 383 (2007)).

### III.   ANALYSIS

#### A. We will not consider the documents attached to Rodriguez's opening brief.

As a preliminary matter, Rodriguez attached roughly 350 pages of documents as "exhibits" to his opening brief. St. Luke's requests that this Court decline to consider the attachments because they were not included in the record. In response, Rodriguez argues that this Court should consider the attachments because (1) the record is "incomplete by design" as he "was cut off from presenting a defense"; (2) the exclusion "would shield constitutional violations and factual misrepresentations from meaningful review" and "would offend basic principles of fairness and justice"; (3) the documents "provide context and support for the constitutional issues on appeal"; and (4) St. Luke's had filed a motion to augment the record, and therefore, could not "credibly object" to his supplemental materials.

We begin by clarifying the procedure for augmenting the record. "Rule 28 of the Idaho Appellate Rules governs the preparation of the standard clerk's record in appeals before this Court." *Med. Recovery Servs. v. Moser*, 173 Idaho 610, 618, 545 P.3d 999, 1007 (2024). "The rule provides that in civil cases the 'parties are responsible for designating the documents which will comprise the clerk's record on appeal' and lists the pleadings and documents that are automatically included in the standard clerk's record." *Id.* (quoting I.A.R. 28(a); and then citing I.A.R. 28(b)(1)). "The standard clerk's record includes '[a] list of all exhibits offered, whether or not admitted.'" *Id.* (alteration in original) (quoting I.A.R. 28(b)(1)(J)).

"While Idaho Appellate Rule 28 provides for the creation of a *basic* record, it is incumbent upon [the parties] to ensure that other documents, such as motions, memoranda, or declarations, are included in the record[.]" *Edwards v. Lane*, ___ Idaho ___, ___, 578 P.3d 525, 529–30 (2025). Parties may do this by designating those additional documents in the notice of appeal pursuant to Rule 17(i), by "moving to add documents to the record within 28 days of service of the record" pursuant to Rule 29(a), or by "moving to augment the clerk's or agency's record" pursuant to Rule 30(a). *Id.* (citing I.A.R. 17(i), 29(a), 30(a)). Rule 30(a) permits any party, "[a]t any time before the issuance of an opinion," to file a motion to augment the settled clerk's record. I.A.R. 30(a). Importantly, Rule 30(a) provides that the party seeking to augment the record must demonstrate that the documents sought to be augmented were presented to the district court:

> Such a motion shall be accompanied by a statement setting forth the specific grounds for the request and attaching a copy of any document sought to be augmented to the original motion which document must have a legible filing stamp of the clerk indicating the date of its filing, or the moving party must establish by citation to the record or transcript that the document was presented to the district court.

*Id.*

Citing Rule 30(a), on January 11, 2025, Rodriguez filed a motion to augment the clerk's record to add Judge Norton's notice of voluntary disqualification and Rodriguez's motion requesting video access to trial. We denied this motion without prejudice (meaning that the motion could be renewed) because one of the documents did not have a legible filing stamp of the district court clerk and the pages were not separately and sequentially numbered in the format required by Rule 30(a). Rodriguez did not seek to renew his motion. Thereafter, on May 1, 2025, we granted St. Luke's motion to augment the record with various orders and documents presented to the district court below.

Rodriguez now requests this Court consider numerous other documents that he attached to his opening brief. We reject this request. Despite his apparent knowledge of Rule 30, Rodriguez has not (1) filed a motion to argument the record with these documents, (2) demonstrated that the documents were presented to the district court, or (3) formatted the documents as required by Rule 30(a). Furthermore, it is well established that "[t]his Court is bound by the record on appeal and 'cannot consider matters or materials that are not part of the record or not contained in the record.'" *Kootenai County v. Harriman-Sayler*, 154 Idaho 13, 16, 293 P.3d 637, 640 (2012) (quoting *Chisholm v. Idaho Dep't of Water Res.*, 142 Idaho 159, 162–63, 125 P.3d 515, 518–19 (2005)).

13

"Items attached to a party's opening brief are not part of the record and cannot be considered." *Id.* (first citing *McLean v. Cheyovich Fam. Tr.*, 153 Idaho 425, 430–31, 283 P.3d 742, 747–48 (2012); then citing *Goodman Oil Co. v. Scotty's Duro-Bilt Generator, Inc.*, 147 Idaho 56, 59, 205 P.3d 1192, 1195 (2009)). Therefore, we decline to consider these documents.

## B. The district court did not abuse it discretion by striking Rodriguez's pleadings, entering default, and prohibiting him from introducing evidence at trial that was not properly disclosed.

On multiple bases, Rodriguez challenges the district court's decisions to strike his pleadings, enter default, and prohibit him from introducing evidence at trial that was not properly disclosed. First, he argues the district court violated his due process rights because he was prevented from telling the jury his version of events. Second, he argues that the court violated his "right to free speech and to criticize others in public" because "[i]t could have been very easily demonstrated to a jury that every single claim made by . . . Rodriguez . . . regarding St. Luke's Hospital was either completely true, or it was something [he] believed to be true . . . if [he] had been allowed to present [his] case or evidence in the court trial." Third, he argues that the district court erred by imposing these sanctions without adequate warning and without first stating that continued noncompliance would result in default. Fourth, he argues the discovery requests he refused to answer were irrelevant, invasive, or intended to harass. For the reasons set forth below, we affirm the district court's decisions sanctioning Rodriguez.

The district court's discretionary authority to sanction a party for failing to comply with scheduling or discovery orders is governed by Idaho Rules of Civil Procedure 16 and 37. Rule 16 provides that a district court may sanction a party under four circumstances, including if the party "(A) fails to obey a scheduling or pretrial order; (B) fails to appear at a scheduling or pretrial conference; (C) is substantially unprepared to participate in a scheduling or pretrial conference; or (D) fails to participate in good faith." I.R.C.P. 16(e)(1). In addition, the court is permitted to "make such orders as are just, and may, along with any other sanction, make any of the orders allowed under Rule 37(b)(2)(A)." I.R.C.P. 16(e)(2). Rule 37, in turn, provides the range of permissible sanctions for discovery violations in a pending case. The court is authorized to, among other things, issue orders:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

14

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination and initiating contempt proceedings.

I.R.C.P. 37(b)(2)(A). Two principles generally guide a trial court's decision to impose sanctions: "The trial court must [1] balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party and [2] consider whether lesser sanctions would be effective." *Erickson v. Erickson*, 171 Idaho 352, 362, 521 P.3d 1089, 1099 (2022) (alteration in original) (citation omitted).

Prior to entry of default, the district court found that Rodriguez repeatedly failed to appear for noticed depositions and all the court hearings set in 2023, including the sanctions hearings and the pretrial conference. The court found that Rodriguez repeatedly ignored subpoenas and discovery orders despite multiple threats of sanctions and opportunities to comply, and that St. Luke's continued attempts to compel his attendance were "categorically fruitless and ma[de] each subsequent action less reasonable given the lack of any forward movement in this case." The court further determined that Rodriguez repeatedly took "action to delay and frustrate progress in this litigation[,]" such as Rodriguez's frivolous notices of removal to federal court, which warranted the imposition of escalating sanctions. Ultimately, after the series of lesser sanctions failed to prompt Rodriguez to comply with his discovery obligations and court orders, the court struck his answer, entered default against him, deemed St. Luke's factual allegations admitted, and barred him from "present[ing] any evidence related to damages that ha[d] not previously been timely disclosed to [St. Luke's] and other parties prior to the discovery cutoff."

Rodriguez's challenge to the district court's discretionary decision on appeal fails on both procedural and substantive grounds. The first problem with Rodriguez's challenge is that his arguments are unpreserved. "It is well-settled that this Court 'will not address issues raised for the first time on appeal.'" *Alcala v. Verbruggen Palletizing Sols., Inc.*, 172 Idaho 188, 199, 531 P.3d 1085, 1096 (2023) (quoting *Siercke v. Siercke*, 167 Idaho 709, 715, 476 P.3d 376, 382 (2020)). "[A] party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing *or* a party preserves an issue for appeal if the trial court issues an adverse ruling." *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d

849, 853–54 (2022). As set forth above, St. Luke's requested that the court strike Rodriguez's pleadings and enter default for violating the district court's April 25, 2023, order compelling him to attend the deposition in Boise and produce evidence. However, as the district court noted, Rodriguez did not respond to this motion, nor did he ever seek a protective order from the court. Further, after the court granted St. Luke's motion to sanction Rodriguez, he did not seek to have the court reconsider its decision. Thus, Rodriguez did not raise any of these issues to the district court. Consequently, Rodriguez has failed to preserve any challenge to the district court's sanctions.

The second problem is that Rodriguez fails to make a cogent challenge to the district court's discretionary decision to sanction him under Rule 37 for his repeated defiance of court orders and his discovery violations. *See Litster v. Litster Frost Inj. Laws. PLLC*, 174 Idaho 860, 877, 560 P.3d 1007, 1024 (2024) ("Under Idaho Appellate Rule 35, if an issue raised by an appellant is not supported by any cogent argument or authority, it cannot be considered by this Court." (citation modified)); *Owen v. Smith*, 168 Idaho 633, 647, 485 P.3d 129, 143 (2021) ("Failing to demonstrate that an abuse of discretion occurred under any part of the test applied by this Court is fatal to an argument that the court abused its discretion." (citation modified)). In other words, Rodriguez does not apply the background information in this case (with citations to the record) to legal reasons (with the support of legal authority) to demonstrate how the district court abused its discretion when it issued its sanctions. Instead, Rodriguez simply asserts, without citation to legal authority, that "[a] violation of due process this outrageous is shocking to the conscience of the public" and that, "[w]hen a [j]udge acts so inappropriately, as to literally issue an order that one would not even imagine possible in the Soviet Union, the public does not easily recover from this type of injury and the image of the Judiciary is permanently stained." These conclusory and hyperbolic allegations do not amount to a cogent challenge to the district court's discretionary decision.

Rodriguez, representing himself on appeal, asserts that he does not possess legal training and cannot be expected to navigate the complexities of the legal system. Although we appreciate the difficulties inherent in representing oneself in legal proceedings, it is well established that self-represented civil "litigants are not accorded any special consideration simply because they are representing themselves and are not excused from adhering to procedural rules." *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009) (citation omitted). "[P]ro se litigants must

conform to the same standards and rules as litigants represented by attorneys." *Owen*, 168 Idaho 647, 485 P.3d at 143 (citation omitted).

Moreover, even if we disregarded the deficiencies in Rodriguez's opening brief and the lack of preservation, his challenge also fails on the merits. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Sweitzer v. Dean*, 118 Idaho 568, 573, 798 P.2d 27, 32 (1990) (citation omitted). "The fundamental guaranty of due process is absolute" and judicial power may not be exercised in disregard of its strictures. *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 350 (1909). However, "[t]he expression of legal rights is often subject to certain procedural rules: The failure to follow those rules may well result in a curtailment of the rights." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982).

The United States Supreme Court's decision in *Hammond Packing* illustrates this principle. In that case, the State of Arkansas filed suit against Hammond Packing for allegedly violating a state antitrust law. *Hammond Packing*, 212 U.S. at 334. The Arkansas Attorney General sought to take the depositions of various agents of Hammond Packing. *Id.* at 336–37. Hammond Packing refused to attend the properly scheduled depositions, arguing that attending the depositions would be overly burdensome. *Id.* at 338. Even though the trial court rejected Hammond Packing's argument, the company refused to attend future depositions. *Id.* at 339. As a result, the trial court struck Hammond Packing's answer and ordered default judgment in favor of Arkansas. *Id.* at 339–40.

On appeal, the Supreme Court "held that it did not violate due process for a state court to strike the answer and render a default judgment against a defendant who failed to comply with a pretrial discovery order." *Ins. Corp. of Ireland*, 456 U.S. at 705 (discussing *Hammond Packing*).

> Such a rule was permissible as an expression of "the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered . . . [T]he preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense."

*Id.* (alterations in original) (quoting *Hammond Packing Co.*, 212 U.S. at 350–51). The Supreme Court stated that "the law of the United States, as well as the laws of many of the states, afford examples of striking out pleadings and adjudging by default for a failure to produce material evidence, the production of which has been lawfully called for." *Hammond Packing*, 212 U.S. at

351. Because Hammond Packing refused to attend lawfully scheduled depositions, the state court did not err by striking its answer and entering default judgment in favor of Arkansas. *Id.* at 350–54

We recognized the *Hammond Packing* principle in *Sherwood & Roberts, Inc. v. Riplinger*, 103 Idaho 535, 650 P.2d 677 (1982). There, we stated that "a defendant's appearance, answer, and compliance with discovery requests are all central to the adjudicative process, and concern 'the rightful decision of the cause.'" *Id.* at 540, 650 P.2d at 682 (quoting *Hammond Packing Co.*, 212 U.S. at 350–51). Furthermore, "[t]he courts have inherent power to establish reasonable rules to manage their own affairs and achieve the orderly and expeditious disposition of cases." *Id.* (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). "Thus, when defendants fail to proceed with their defense in accordance with those rules, the courts are justified in creating such presumptions as addressed in *Hammond*." *Id.* "In such a case, 'the sanction is nothing more than the invocation of a legal presumption, or what is the same thing, the finding of a constructive waiver.'" *United States v. Batato*, 833 F.3d 413, 428 (4th Cir. 2016) (quoting *Ins. Corp. of Ireland*, 456 U.S. at 706).

In this case, Rodriguez failed to proceed with his defense in accordance with Idaho's discovery rules. In fact, Rodriguez's misconduct is far more egregious than that of Hammond Packing's. As set forth above, the record is replete with instances of Rodriguez (1) willfully disregarding properly noticed depositions, (2) refusing to provide complete responses to interrogatories, and (3) failing to produce documents that were lawfully requested. And, all the while, Rodriguez ignored multiple court orders compelling him to comply with his discovery obligations and warning him that he would be subject to additional sanctions (including the striking of his pleadings and entry of default) if he failed to comply. This campaign of defiance and delay "frustrate[d] progress in this litigation[,]" as the district court found, and interfered with "the rightful decision of the cause," *Sherwood & Roberts, Inc.*, 103 Idaho at 540, 650 P.2d at 682 (quoting *Hammond Packing*, 212 U.S. at 350–51). Therefore, the district court did not violate Rodriguez's due process rights by striking Rodriguez's pleadings, entering default, and precluding Rodriguez from presenting evidence that was not properly disclosed before trial, regardless of his allegation that, given the opportunity, he could have "very easily demonstrated to a jury that every single claim" he made was either true or something he believed to be true. As the Supreme Court stated in *Hammond Packing*, a "presumption that the refusal to produce evidence material to the

18

administration of due process [is] but an admission of the want of merit in the asserted defense" enforces rather than denies due process. 212 U.S. at 351.

Rodriguez's remaining arguments are also without merit. First, his allegation that the sanctions issued by the district court were unnecessarily harsh because lesser sanctions could have sufficed is belied by the record. As the district court found, multiple lesser sanctions had already been imposed and had failed. Given that Rodriguez had ignored these lesser sanctions, further incremental measures would be futile, as the district court concluded.

Next, Rodriguez's argument that the district court imposed these sanctions without adequate warning and without first stating that continued noncompliance would result in default is also belied by the record. The district court specifically warned Rodriguez in its February 8, 2023, order granting St. Luke's motion to compel that his "[f]ailure to comply with this Order can result in sanctions listed in Idaho Civil Rule of Procedure 37(b) which may include: . . . striking pleadings in whole or in part . . . [and] rendering a default judgment against the disobedient party[.]" Furthermore, in its April 25, 2022, order granting St. Luke's motion for sanctions, the district court considered but declined to grant St. Luke's request to award default against Rodriguez and instead opted to impose the lesser sanctions by ordering Rodriguez to personally attend a deposition. Thus, there is no question that Rodriguez was made aware that his continued refusal to comply with court orders could result in the sanctions imposed in this case.

In sum, Rodriguez continuously tested the patience of two experienced trial judges for over a year until they reasonably concluded that there was no alternative to striking his answer and entering default because every other measure had failed to secure his compliance. His challenge to these actions on appeal is lacking in any factual or cogent legal basis. For these reasons, we hold that Rodriguez's challenge to the sanctions imposed by the district court in this case is procedurally deficient and fails on the merits. Therefore, we affirm the district court's decisions sanctioning Rodriguez.

## C. Rodriguez waived his challenge to the district court's permanent injunction.

In his reply brief, Rodriguez challenges the district court's permanent injunction on several bases. First, he contends that the injunction is an "[u]nconstitutional [p]rior [r]estraint on [f]uture [s]peech." Second, he argues that the "[d]efault [j]udgment [d]oes [n]ot [w]aive [f]uture [f]ree [s]peech [r]ights." Third, he argues that the "one-sided record cannot serve as a constitutional basis for a permanent speech ban or massive financial penalties." Fourth, he posits that "[t]he

injunction's vague and overbroad terms chill lawful speech far beyond any proven defamatory statements." Fifth, he argues "[t]he district court failed to make specific, narrowly tailored findings justifying the scope of the injunction under strict constitutional standards." Finally, arguing that St. Luke's ignored the Idaho Legislature's newly enacted "Anti-SLAPP Law,"[1] Rodriguez maintains that St. Luke's "conced[es] that their lawsuit conflicts with Idaho's legislative values."

It is well established that "this Court will not consider arguments raised for the first time in the appellant's reply brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) (internal quotation marks and citation omitted). "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Id.* Therefore, we decline to consider Rodriguez's arguments challenging the district court's permanent injunction.

### D. Rodriguez waived his jury bias arguments because he did not participate in the trial.

Rodriguez raises two jury-related arguments on appeal. First, he contends that the entire jury pool was prejudiced after the district court stated that Rodriguez and the other defendants "have elected not to participate in the jury trial." He claims that this statement was a lie because he filed a petition to appear virtually at trial, which was rejected by the district court. He further asserts that, "[s]ince Diego Rodriguez lives in Orlando, Florida over 2,500 miles away, it is simply not reasonable to expect him to physically come to the courtroom, particularly when appearing in court via video has become standard protocol for years now." Second, he argues that specific jurors should have been excused for cause. St. Luke's responds that neither issue was preserved because he did not participate in jury selection. It further argues that both claims lack merit. We agree with St. Luke's that Rodriguez has failed to preserve these issues on appeal.

The right to a fair trial before an impartial jury is fundamental to both the United States and Idaho Constitutions. U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); Idaho Const. art. 1, § 7 ("The right of trial by jury shall remain inviolate . . . ."). In both civil and criminal proceedings, "[t]he American tradition of trial by jury . . . necessarily contemplates an impartial jury drawn from a cross-section of the community." *McCandless v. Pease*, 166 Idaho 865, 881, 465 P.3d 1104, 1120 (2020) (first quoting *Thiel v. S. Pac. Co.*, 328 U.S. 217, 220 (1946); and then citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128 (1994)).

---

[1] *See* Uniform Public Expression Protection Act, I.C. §§ 6-3901 to 6-3915.

"It is in the trial court's discretion to determine whether a juror can render a fair and impartial verdict." *Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 141, 937 P.2d 1212, 1215 (1997) (citations omitted). "On appeal, we review the trial court's selection of jurors for an abuse of discretion." *Id.* (citations omitted). "In ruling on a challenge for cause, the trial court must consider the facts and decide if the juror should be excused pursuant to [Idaho Rule of Civil Procedure 47(h)], which sets forth the grounds for challenges for cause." *Id.* (citing *Quincy v. Joint Sch. Dist. No. 41, Benewah County*, 102 Idaho 764, 768, 640 P.2d 304, 308 (1981)). Rule 47 provides in pertinent part:

> Challenges for cause may be made at any time while questioning a prospective juror, or no later than the conclusion of all questions to an individual prospective juror, or the prospective jury if questioned as a whole, except that a challenge for cause may be permitted by the court at a later time upon a showing of good cause. Challenges for cause, as provided by law, must be tried by the court. The challenged juror, and any other person, may be examined as a witness on the trial of the challenge.

I.R.C.P. 47(h)(1).

Preservation of a for-cause challenge is itself a procedural requirement under Rule 47. *See id.* "Where a party fails to challenge a juror for cause during voir dire and ultimately passes the jury panel for cause, that party waives any objection to those jurors on appeal because the issue has not been properly preserved." *Mulford v. Union Pac. R.R.*, 156 Idaho 134, 138–39, 321 P.3d 684, 688–89 (2014) (citing *Morris*, 130 Idaho at 141, 937 P.2d at 1215). "This is because 'any objection to the trial court's refusal to remove a prospective juror for cause is waived when a litigant does not renew his challenge for cause prior to passing the jury.'" *Id.* (alterations omitted) (quoting 50A C.J.S. *Juries* § 354).

In this case, Rodriguez did not participate in jury selection (or otherwise attend the trial) and, therefore, did not raise any jury-related objections during jury selection or object to the district court's statement that Rodriguez "elected not to participate in the jury trial." Rodriguez acknowledges that he did not personally participate in jury selection, but attributes this to the district court's refusal to permit him to appear remotely despite his request to do so. The district court's decision, he argues, effectively denied him a meaningful opportunity to participate in jury selection; thus, he should not be deemed to have waived his objections.

The circumstances of this case do not warrant any exception to our preservation doctrine. First, we reject Rodriguez's claims that the district court denied him a meaningful opportunity to

participate in jury selection and lied to the jury about his failure to participate during the trial. The district court's June 30, 2023, order granting St. Luke's motion for reconsideration expressly stated that Rodriguez, and other defendants, "may participate in the jury trial if they appear in person" and "will be permitted to participate in jury selection, subject to the limitations and restrictions."[2] Thus, Rodriguez was clearly permitted to participate in jury selection.

Second, even if the district court had not expressly required trial participation to be in-person, Rodriguez's request to appear virtually was untimely. During the hearing on December 20, 2022, the district court clearly instructed Rodriguez that, if he wished to appear by video for anything other than a status conference, he was required to file a request for approval at least "a couple of days in advance" to secure a courtroom that could accommodate a video conference hearing:

> [DISTRICT COURT:] Mr. Rodriguez, if you want to appear at that hearing by video conference, you actually have to make a specific request, because for the very reason that you can't hear particularly well today is why we need to know in advance, like a couple of days in advance, to get a courtroom assigned where we can actually make sure that the audio is such that everyone can participate if there are some attending by video conference.
>
> MR. RODRIGUEZ: Sounds good.

Despite these instructions, Rodriguez did not file a notice requesting remote video access until Sunday, July 9, 2023, at 10:33 p.m., before jury selection was scheduled to begin the following morning. Accordingly, Rodriguez did not submit a timely request before trial, as the district court found.

"In a civil case, a trial can commence and proceed in the absence of a party who fails to appear at the trial." *Pierce v. McMullen*, 156 Idaho 465, 469, 328 P.3d 445, 449 (2014) (citing *Dustin v. Beckstrand*, 103 Idaho 780, 786, 654 P.2d 368, 374 (1982)). Given the earlier warrant of attachment issued by the district court, Rodriguez may have preferred to avoid an appearance in an Idaho courtroom throughout this litigation. However, the district court's denial of his untimely request to appear remotely at trial does not constitute a withholding of a meaningful opportunity to participate during jury selection, nor does it create an occasion for this Court to disregard our longstanding preservation doctrine. Accordingly, because Rodriguez did not timely challenge any

---

[2] In a footnote, the district court stated that "'Limitations and restrictions' refers in part to the scope of the jury trial being limited to default damages. Additionally, defaulted Defendants will not be allowed to present any evidence related to damages that has not previously been timely disclosed to Plaintiffs and other parties prior to the discovery cutoff."

jurors or the panel as required by Rule 47, and because he failed to follow established procedures to ensure his participation, we conclude Rodriguez waived his claims of jury bias.

### E. Rodriguez waived his judicial bias argument.

On appeal, Rodriguez contends that reversal is necessary based on Judge Norton's alleged conflict of interest and appearance of bias. Rodriguez notes that "Judge Norton ruled against [him] on every opportunity" and argues, for the first time on appeal, that Judge Norton should have recused herself from the case because she is married to a longtime official at the Bureau of Land Management ("BLM"), "which has an empirically demonstrable hatred for the Bundy family[.]" "The consequences of [Judge Norton] presiding over this case," Rodriguez argues, "amount to a full-fledged denial of [his] . . . due process rights and have so substantially affected the outcome of the case as to render the entire case outcome as unsound, erroneous, fundamentally flawed, and even fraudulent." In response, St. Luke's notes that Rodriguez failed to file a motion for disqualification while Judge Norton presided over the case and, therefore, has failed to preserve this issue for appeal. We agree.

As a general matter, this Court will not review claims of judicial bias for the first time on appeal in the absence of a motion for disqualification below. *Owen v. Smith*, 168 Idaho 633, 647, 485 P.3d 129, 143 (2021); *Zylstra v. State*, 157 Idaho 457, 468, 337 P.3d 616, 627 (2014). The party alleging prejudice is responsible for raising issues of judicial bias, and the proper method for doing so is by filing a motion to disqualify supported by an affidavit identifying specific factual or legal grounds for disqualification. *See* I.R.C.P. 40(b)(2) ("A motion to disqualify for cause must be accompanied by an affidavit of the party . . . stating the specific grounds upon which disqualification is based and the facts relied upon in support of the motion.").

Here, the record contains no such motion, affidavit, or other filing meeting Rule 40(b)(2)'s requirements. And, while Rodriguez argues that he "consistently objected to Judge Norton's bias throughout the proceedings" and that "Idaho law allows substantive bias claims to be preserved even when raised informally by unrepresented parties[,]" he provides no legal authority to support these claims or any citations to the record that demonstrate any specific acts of bias by Judge Norton. "This Court will not search the record for error. We do not presume error on appeal; the party alleging error has the burden of showing it in the record." *Dep't of Fin., Sec. Bureau v. Zarinegar*, 167 Idaho 611, 627, 474 P.3d 683, 699 (2020) (citation omitted). "If an appellant fails to 'assert his assignments of error with particularity and to support his position with sufficient

authority, those assignments of error are too indefinite to be heard by this Court.'" *See PHH Mortg. v. Nickerson*, 164 Idaho 33, 38, 423 P.3d 454, 459 (2018) (quoting *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 323, 297 P.3d 1134, 1140 (2013)). Accordingly, Rodriguez has waived his claim of judicial bias.

### F. St. Luke's is entitled to attorney fees on appeal.

St. Luke's requests an award of attorney fees and costs on appeal under Idaho Code section 12-121. Attorney fees on appeal under Idaho Code section 12-121 are not awarded to a prevailing party as a matter of right but, rather, are subject to this court's discretion. *See Snap! Mobile, Inc. v. Vertical Raise, LLC*, 173 Idaho 499, 528, 544 P.3d 714, 743 (2024). The statute provides, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. On appeal, "[a]n award of attorney fees is appropriate if the law is well-settled and the appellants have made no substantial showing that the district court misapplied the law." *Ramlow v. Mitchell*, ___ Idaho ___, ___, 571 P.3d 437, 443–44 (2025) (citation omitted).

We conclude that Rodriguez's appeal lacked any reasonable basis in fact or law. He presented multiple issues on appeal that he failed to raise below, he failed to properly support those issues with cogent argument and authority, and his submissions to this Court contain numerous inflammatory factual assertions consisting of exaggerations, distortions, and unfounded accusations. As a result, we award St. Luke's its reasonable attorney fees pursuant to section 12-121.

## IV.  CONCLUSIONS

For these reasons, we affirm the judgment of the district court. St. Luke's is awarded its reasonable attorney fees on appeal and is further entitled to costs on appeal as the prevailing party as a matter of course.

Chief Justice BEVAN and Justices BRODY, MOELLER, and ZAHN CONCUR.